TOEPFER *v.* GOETZ and another.

*(Circuit Court, N. D. Illinois. July 5, 1887.)*

1. PATENTS FOR INVENTIONS—MALT-KILN—INFRINGEMENT.
   Letters patent granted April 27, 1880, to Wenzel Toepfer, for a "malt-kiln," *held* not to be infringed by a device for tilting the sections of the floor of a malt-kiln by means of a round tilting-rod or rock-shaft, passed through the sections to be tilted; the patentee having limited his claim to a square or polygonal rock-shaft passing through square holes in the journals.

2. SAME.
   A claim in the above patent for a locking device to fasten the levers used for tilting the floor sections of a malt-kiln, by means of a hook pivoted on

one shaft, and arranged to catch over either of the adjoining ones, *held* not to be infringed by an old and well-known device of a latch or pin applied to this purpose.

*Stout & Underwood*, for complainant.
*Chas. G. Page*, for defendant.

BLODGETT, J.   This is a bill in equity to restrain the alleged infringement of a patent granted April 27, 1880, to the complainant, Wenzel Toepfer, for a "malt-kiln."   The portion of the patent in controversy in this case relates to certain devices for constructing, suspending, and dumping the floors of malt-kilns; and the device described and shown consists of the floor of a malt-kiln, constructed in sections or strips of about 12 inches in width, and extending the length of the kiln, so that each section can be tipped or turned into a vertical position, by which the malt upon it will be dumped or dropped onto the next floor, or into a receptacle below.   He calls these sections "trays," and they are made of wire gauze or perforated sheet metal, so as to give ample opportunity for the circulation of the warm air through the floors, and the malt resting thereon.   These trays are constructed by making a frame of comparatively light iron strips, about the width of the intended sections, say 12 inches, through the middle of which is run a rock-shaft or tilting-rod; and upon this frame, wire gauze or perforated sheet metal is stretched and fastened so as to form the floor.   The end pieces of the frame are constructed with journals which are intended to rest upon proper supports in the ends of the kiln; and through this journal is a square opening of the proper size to receive the tilting-rod or rock-shaft, which is square, and extends the entire length of the frame, and, if the trays are so long as to require intermediate support between the ends, such support is furnished by brackets resting upon a cross timber or beam.   One end of this tilting-rod or rock-shaft extends through the end wall of the kiln, and has a crank attached to it, so that the section can be tipped from a horizontal into a vertical position by means of this crank; and by connecting the cranks of the adjacent sections together by a rod or link, and by means of a lever operating this rod or link, all the sections, or so many of them as are so connected, can be thrown from a horizontal into a vertical position by a single movement of this lever, whereby the contents of the floor will be dumped, and by a reverse movement of this lever the sections will be brought back to their horizontal position, so as to form a continuous floor.

Infringement is charged in regard to the first two claims of the patent, which are as follows:

"(1) In a malt-drier, a removable tilting-tray, provided with journals having bearings in the end walls of the kiln, and on an intermediate bracket or brackets, the journals of the trays having polygonal openings for the reception of a polygonal tilting-shaft, in combination with a corresponding tilting-shaft, substantially as and for the purpose specified.   (2) In a malt-drier, the combination of three or more tilting-trays, provided with tilting-shafts having crank-arms, a coupling bar or rod for connecting the crank-arms of the

tilting-shafts, and a locking-hook, pivoted to the central tilting-shaft, and adapted to fit over either of the other shafts; the whole arranged substantially as and for the purpose specified."

The defenses interposed are (1) that the patent is void for want of novelty; (2) that the defendants do not infringe.

The proof shows, without dispute, that perforated floors to malt-kilns, so arranged that the sections or trays could be tilted or tipped in such manner as to dump the contents, were old at the time this inventor entered the field; and it also appears, without dispute, that it was old in the art to make the floors open, either with wire netting or perforated iron plates, to allow the free circulation of the heated air through the contents of the kiln. A perforated malt-kiln floor, so arranged as to dump the contents by tilting or tipping, is shown in the patent of November 13, 1866, issued to Joseph Gecman; and on September 15, 1867, another patent was taken out by Gecman, in which he shows a perforated floor in sections or trays, each tray balanced upon a rock-shaft so as to be "susceptible of being tipped or tilted, and thus discharge the malt upon the same as desired," and each of these supporting rods was cranked at one end, so that the trays could be tilted by the operations of such cranks, and these cranks were so connected by a link or rod that all the trays could be dumped by one movement of a lever operating this rod; and substantially the same arrangement is shown in a patent issued to one Rhodes in January, 1869, and in another patent issued to Gecman, dated March 25, 1873.

The proof also shows that malt-kilns were constructed and operated with some degree of success under the Gecman patents; and the only practical objection to the kilns constructed under the Gecman and Rhodes patents seems to have been the lack of strength in the wire netting or perforated metal of the trays to carry the requisite load of malt; and hence the outer edges of these trays would sag or bend, or the trays would twist by the operation of dumping. Gecman's patents showed a malt-kiln floor in sections or trays, each section resting upon a rock-shaft or tilting rod cranked at one end, and the cranks so arranged with links and levers that the trays could be dumped simultaneously. The complainant by his patent shows and describes a malt-kiln floor made in sections or trays like Gecman's, each section having a cranked rock-shaft by which it can be dumped; but he constructed his trays by first making a frame strong enough to hold the wire netting or perforated iron plates which formed the surface of the floor, so as to avoid the difficulty which had been met in the use of the Gecman trays, and suspended this frame in the kiln by means of journals resting on proper supports in the ends of the kilns, and on intermediate brackets, when the length of the sections was such as to require intermediate support, and through the length of this frame he ran a square rock-shaft or tilting-rod, which passed through square holes in the journals; and, this tilting-shaft being cranked at one end, the trays could be dumped by means of connecting rods and levers, the same as was shown in Gecman's floors. This feature of the device is covered by the first claim of the patent,

which is for the combination of this square (or polygonal, as he calls it in the claim) tilting-shaft with his tilting section.

The complainant also shows in his drawings and specifications a means for locking the trays, either in the horizontal or vertical position, by a hook pivoted to the central tilting-shaft, and so bent and arranged as to catch over the end of either of the other shafts; and this element in his patent is covered by the second claim.

The defendants construct a malt-kiln floor in sections or trays, and the sections are made in substantially the same manner as those of the complainant,—that is, by constructing a frame of light iron about as wide as the tray, and upon this frame fastening a sheet of perforated metal to form the surface of the floor, and through this frame longitudinally extends a round rod or rock-shaft, the ends of which form the journals which rest in proper supports in the sides of the kiln; this rod being fastened rigidly to the frame with pins or set screws at points where it passes through the cross-pieces of the frame, so that the tray is rocked or tilted by rocking or turning this shaft. But the defendants do not extend their trays or sections the entire length of the kiln, and operate them by a crank, working on the end of the tray; but they put in their floors in sections, each section being of the width of the floor, and composed of enough trays to reach from side to side of the kiln; and the trays in each section are dumped by means of a dependent lever or crank fixed to the under side of the trays, and near the middle of the trays,— the cranks of an entire section or series of trays being connected by a rod or link which extends through one side of the kiln, where it is operated by a lever, so as to dump all the trays in a section by one movement. For practical use, the defendants make their trays about 12 feet long, and place sections composed of their trays end to end, so that a floor 36 feet long would be made of three sections of trays; and these sections are supported, except at the end walls, upon brackets extending upward from beams or joists running across the kiln; and they lock their trays in the horizontal position by a latch which holds the operating lever in a vertical position. The only substantial difference I can see between the trays constructed according to the complainant's patent, and those made and used by defendants, is that defendants use a round rock-shaft where complainant shows a square or polygonal one, and the ends of defendants' rock-shaft form the journals upon which the trays turn. Complainant fastens his rock-shaft rigidly to the tray by passing it through square holes, while defendants pass theirs through round holes, and make it rigid with the frame of the tray by pins or set-screws.

If complainant had been the first to make a tilting-floor in sections or trays for a malt-kiln, I should be inclined to consider the changes made by the defendants as merely colorable, and the equivalent of the devices shown by complainant,—that is, if complainant had properly covered his invention by his claim; but the complainant has seen fit, as it seems to me, to limit his patent to a square rock-shaft, which must pass through square holes in the journals. He says in his specifications: "These journals I make hollow, with square bearings, for the operating-rods, F,

which are also square." And again he says: "To bring about this dumping, I provide square rods, F, with crank arms, J, and pass the rods, F, through the journals, E," etc; and, in explaining the utility of his device, complainant says:

"Heretofore it has been impossible to use very long iron trays, and to operate them from the outside, as it was difficult to control them, owing to their liability to spring and twist. Long wooden trays are open to the same objection, and have had to be dumped separately by an operative who entered the kiln. *But by means of my square rods, F,* I can apply the dumping force equally along the entire length of the trays, and, as there is no keying to be done, there will never be any danger of the parts becoming loose or getting out of order."

And the claim is for a combination of a tray, the journals of which have polygonal openings for the reception of a polygonal tilting-shaft, with a corresponding tilting-shaft,—that is, a square or polygonal tilting-shaft,—so that I can see no escape from the conclusion that the complainant has, by his specifications and his claim, limited his patent to a tilting-tray, operated by a square or polygonal tilting-shaft. It is wholly irrelevant to inquire whether complainant was obliged to limit himself to this square shaft by the state of the art, or the ruling of the patent-office. It is enough to say that he did so limit himself by language which cannot be misunderstood, and will admit only of this construction.

The defendants use a round tilting-rod in place of the square one used and described by complainant, and I cannot, therefore, say that defendants use the combination covered by the first claim of complainant's patent.

It may also be said that Gecman showed round tilting-rods in his 1867 patent; which, being now common property, the defendants have the right to use so long as they perform the same function in defendants' device as they did in Gecman's. It is obvious that, in order to enable this rock-shaft or tilting-rod as used by Gecman and the complainant and defendants to operate to turn or tilt the tray, it must be so rigidly attached to the tray as that, when the shaft is turned, it will turn the tray, and complainant seems to have conceived that the best, if not the only, way to do this, was to make the shaft square, and pass it through square openings in the frame of the tray; while defendants took the old round shaft of Gecman's 1867 patent, and passed it through round holes in the frame, and made it rigid to the frame by keys or pins. Both were old and well-known modes of making a rod or shaft rigid or integral with a frame which it was to operate or carry; and it may be doubtful if, after Gecman had shown the function of a rock-shaft, in connection with a section or strip of a floor, for the purpose of tilting such section, there was any invention in either of these modes of fastening the shaft to the tray.

The first claim of this patent does not cover, nor purport or attempt to cover, the mode of strengthening the Gecman section, so that its edges or corners would not sag or bend, as it is said the Gecman floors did, but

covers the square shaft, in combination with a tray which must be journaled in the end walls of the kiln, and on intermediate brackets, which journals must have polygonal openings for the reception of a polygonal shaft. No claim in the patent covers the mode of reinforcing the wire netting or perforated sheet metal which forms the floor, so that it will not bend under the load of malt put upon it, nor the intermediate supporting bracket; and hence, if there was any invention involved in the construction of this supporting frame or the bracket, it has been abandoned to the public.

As to the complainant's second claim, for the locking device by means of the hook pivoted on one shaft, and arranged to catch over either of the adjoining ones, it is enough to say that defendants do not use a hook, but have adopted the old and well-known device of a latch or pin; and, while this hook device of complainant may be new, it cannot prevent defendants from adopting the latch any more than a new door catch would prevent a man from using the old fashioned latch or pin to fasten his door.

I am therefore of opinion that defendants do not infringe either of the claims of this patent, and complainant's bill must be dismissed for want of equity.