CARD v. COLBY.

(Circuit Court of Appeals, Seventh Circuit. November 28, 1894.)

No. 184.

1. PATENTS—CONSTRUCTION OF CLAIMS—LIMITATION.
   A claim should be read and construed in the light of the description and drawings and of the state of the art, not to enlarge the claim, but

to ascertain its true meaning and the extent of the invention asserted; and to such invention the patent must be restricted, although the actual invention made may have been of a broader scope.

**2.** SAME—LIMITATION—INFRINGEMENT—TOY BANKS.

The Colby patent, No. 373,223, for a "toy locomotive," and which relates to a toy bank having a discharging aperture controlled by a spring latch operated by the weight of the accumulated coin within, is limited by the language of the description and claim to toys, and is not infringed by a coin container operated on the same principle, but which consists merely of a hollow tube not adapted to be used as a toy vehicle, and which is not in fact a toy. 63 Fed. 462, reversed.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

This was a suit by Edward J. Colby against George E. Card for infringement of a patent. The circuit court sustained the patent, and entered an interlocutory decree enjoining infringement (63 Fed. 462), from which decree defendant appeals.

Cyrus J. Wood (E. M. Marble, of counsel), for appellant.

Barton & Brown, for appellee.

Before WOODS and JENKINS, Circuit Judges, and BUNN, District Judge.

JENKINS, Circuit Judge. This is an appeal from an interlocutory decree passed on the 3d day of May, 1894, adjudging the validity of letters patent No. 373,223, issued to Edward J. Colby, November 15, 1887, for a "toy locomotive," and restraining the appellant from making, using, or selling toy banks or coin receivers containing the invention described and set forth in such patent, or from otherwise infringing upon Mr. Colby's rights under the patent. Colby v. Card, 63 Fed. 462. The decree adjudged that the appellant had infringed in making, using, and selling devices for coin holders made under and in accordance with letters patent No. 449,-280, issued to Henry M. Brigham, March 31, 1891. The controversy involves the merits of the Colby patent, and the proper construction of the first claim therein, and the question of infringement. The specification forming part of the letters patent states that Mr. Colby has invented a "new and useful bank." He says:

"My invention relates to toys for banks, paperweights, and the like, and has for its object to provide a bank which can be used as a toy to be drawn by a child, can be used as a paperweight, or can be used as a bank, the contents of which are adapted to open the bank when they reach a certain weight. These objects I accomplish by means of the mechanism illustrated in the accompanying drawings."

The drawings represent a toy locomotive, and the patentee describes the use and operation of his invention as follows:

"The device is composed of two similar parts, which are brought together, and the locking cross rod is then placed in position with one end of its flange resting upon one side of the boiler, and its other end is upset, so as to securely fasten the parts together. In this position the smokestack and sand chest are firmly secured to the top of the boiler, so as to cover the aperture therein. The driving wheels may be either cast with the rest of the device, or they may be loose to rotate thereon. The money may now be introduced through the slit in the top of the cab, and when a sufficient quantity has been introduced to cause the weight thereof to force

the spring in the forward end of the boiler, and thus to depress the locking piston, the money contained in the cab will pass into the steam boiler, and the weight thereof will cause the lock piston to descend, so that the hook on the bar, K, is freed, and the smokestack and the sand chest may be removed, thus leaving an aperture in the boiler through which the coin may be extracted. As soon as this is done, the spring will restore the lock piston to its proper position, and if the piece, K, be again placed in position, the smokestack and sand chest will be locked to the boiler, as in the beginning."

He further states:

"I have shown my improvement as applied to a locomotive; but I have also applied it to other devices,—as, for instance, fire engines, wagons, and the like. It will be readily seen that its application to toys other than locomotives will be perfectly easy."

The claims of the patent are as follows:

"(1) A toy bank consisting of a hollow toy provided with a coin-receiving and a coin-discharging aperture, a movable cover for the discharging aperture, and a spring latch to secure the same from within; said spring latch being normally closed, but constructed to be opened by the weight of the coin within.

"(2) A toy bank consisting of a hollow locomotive provided with a coin-receiving aperture, a removable smokestack which covers the aperture through which the coin is removed, and a spring latch which is adapted to lock the smokestack in position, but, when depressed by the weight of the coin, permits it to be released and removed, so that the coin may be abstracted.

"(3) A toy bank consisting of a locomotive provided with a hollow boiler which serves as a coin receptacle, a removable smokestack which covers the aperture through which the coin is removed, and a spring latch which is adapted to lock the smokestack in position, but, when depressed by the weight of the coin, permits it to be released and removed, so that the coin may be extracted."

The first claim of the patent is alone involved in the contention here. The alleged infringing device is substantially a single tube having a fixed cover and a removable bottom, and provided with a slot or guide through which the coins are inserted. Attached to the removable bottom is a spiral spring upon which there is a cup-shaped piston. There is also a radially moving spring fixed near the end, which is secured in place, and dropped into a pocket on the inside of the cylinder, thereby preventing the bottom cover from being unscrewed. The cup-shaped follower is pressed towards the top of the cylinder by the spiral spring, but upon the insertion of the coins it is depressed until finally it moves over the radially moving spring, and presses it back out of the pocket in the cylinder, releasing the bottom cover so that it may be unscrewed, and the coins removed; in the language of the claim, "the bottom being automatically released by the pressure of the coin when a predetermined number is inserted." The difference in operation between the two articles is well and succinctly stated by the learned judge whose decree is here under consideration:

"The pressure operating upon the latch in the case of the complainant's device, and necessary to overcome the resistance of the spring, is the weight of the coin; the pressure in the defendant's device is the weight of the coin, with such added force as is communicated to the column of the coin by the forced introduction of the last piece. In one, the operating force is weight, pure and simple; in the other, the operating force is weight added to the pressure which is communicated by a wedge through a solid column."

The court below held that these are mechanical equivalents; that the appellant's device had adopted the appellee's idea of a spring, and had merely so strengthened it that a slight pressure added to the weight of the coin was necessary to overcome its resistance. In this opinion we fully concur, if the doctrine of mechanical equivalents can be properly applied in this case. And this brings us to the proper construction of the first claim of the Colby patent.

The claim should be read and construed in the light of the description of the invention and drawings attached, and of the state of the art to which the invention belongs, not to enlarge the claim, but to ascertain its true meaning and the actual invention asserted, and which the inventor desired to secure by letters patent. The question, then, is, did Colby claim a combination of several things, or the distinct invention of several things, or both? In other words, did he claim to have invented a coin holder having the capacity of being opened when the contained coin reaches a certain predetermined weight, independently of any combination; or was his claim for that in combination with a toy locomotive, a toy fire engine, a toy wagon, and the like, and to be limited to such combination? This is a material question, for a combination is an entirety, and, if the claim is for the combination of devices, there is manifestly no infringement here, the alleged infringing device being but one of the devices of the combination; otherwise, if the patent is for the distinct invention of one or several things; because we think that, in the alleged infringing device, the principle of opening the container of the coin by means of a certain predetermined weight of coin is applied substantially in the same way that it is applied by Mr. Colby in his device. There is substantial identity in that regard. So that the question is, what was the real subject of the patent? What did Colby declare and claim his invention to be? Was it for the general principle of opening a receptacle by means of a predetermined weight applied to a coin container, or was it for such a device in combination with a toy locomotive or other like toys? This can best be answered by the language employed by the patentee, for he is supposed to be fully informed with regard to his invention, and to know the precise nature of his claim. There is, however, one circumstance, says Mr. Curtis, that will always be decisive in construing a patent against a claim for the several things described in the specification, and that is that one or more of them is not new. 1 Curt. Pat. § 249. Let us look, then, at the state of the art at the time of this invention. Toy locomotives, confessedly, were well known. The general principle of unlocking by means of predetermined weight was known. It is illustrated in the patent to Albert S. Gabbey, No. 343,763, dated June 15, 1886, for an automatic grain weighing and registering machine. There the discharge cover was automatically released and opened by predetermined weight. We are not to be understood to assert that the Gabbey patent anticipates the coin-containing devices in question here, or that there is lack of invention in adapting the principle to coin containers. We refer to it to show that the broad principle

of automatic opening of a receptacle by predetermined weight was not new at the time of Colby's invention. In the Bossert patent for a savings box, No. 329,706, dated November 3, 1885, we find an invention, not indeed containing the same elements combined in substantially the same way to produce substantially the same result, but we find the broad principle of disengaging, by means of the coin introduced, the internal mechanism from the door of a savings box, so that the latter may be opened to remove the contained coins. There the registering wheel is operated by the weight or impact of the several coins as they enter. The cover is automatically released by the retraction of the latch, caused by the introduction of a predetermined number of coin. In the present device the release of the cover is effected by means of the combined weight of the coin. We cannot, therefore, regard Mr. Colby as a pioneer in the art. He has used an old device and a known principle, and produced a desirable toy bank. As well stated by his counsel, the Colby device "is a machine,—a definite combination of definite elements assembled to accomplish a given result"; or, as stated by the court below, "the combination with a hollow toy, having a coin receiving and discharging aperture, of a spring latch which secures the opening aperture from within until the specific weight of coin operating thereon opens the latch." What is it, then, that he asserted and claimed to have invented? The patent is for a "toy locomotive"; and he states that he has "invented a new and useful bank"; that "my invention relates to toys for banks, paperweights, and the like, and has for its object to provide a bank which can be used as a toy to be drawn by a child, can be used as a paperweight, or can be used as a bank." After describing the locomotive and the manner of operation, he states:

"I have shown my improvement as applied to a locomotive; but I have also applied it to other devices, as, for instance, fire engines, wagons, and the like. It will be readily seen that its application to toys other than locomotives will be perfectly easy."

Then follow the claims. Nos. 2 and 3 (not here involved) are respectively for a toy bank consisting of a "hollow locomotive," etc., "a toy bank consisting of a locomotive provided with a hollow boiler," etc. The first claim—the one in issue—declares for a "toy bank consisting of a hollow toy, provided with a coin-receiving and a coin-discharging aperture," etc. We are of opinion that a correct construction of the first claim requires its limitation to toys. Colby had first described a toy locomotive that could serve the double purpose of a plaything and a savings bank. He then asserts the application of his improvement to fire engines, wagons, and generally to "toys other than locomotives." The second and third claims are limited to locomotives. The first claim is for "a toy bank consisting of a hollow toy," etc. We cannot eliminate from this claim the words "consisting of a hollow toy," since, as we conceive, they were deliberately inserted to cover the very reservation of his specification that his improvement related as well to all hollow toys as to locomotives. It seems clear to us that the subject that Colby had in mind, and that he desired to secure by letters patent, was a toy to be

drawn by a child, serving also as a mechanical bank; otherwise, the expression in the claim, "a toy bank consisting of a hollow toy," is meaningless. The word "toy" is here twice employed. This double use of the word is significant. It means that the words "hollow toy" do not signify merely a toy bank, but a toy adapted for use as a plaything, and that can also be made to serve the uses of a toy bank. The suggestion that the inventor used the locomotive as but one form of embodying an invention which might exist under various forms, we think cannot be upheld. The suggestion is predicated upon the language of the specification that the invention "has for its object to provide a bank which can be used as a toy to be drawn by a child, can be used as a paperweight, or can be used as a bank." We think it clear that Mr. Colby designed by this language to say, not that he claimed invention for a coin receiver which could be opened by the contained weight, but that he had devised a toy vehicle adapted for optional use; as, a vehicle to be drawn by a child, a toy which might be used as a paperweight, and which also might be used as a bank, operative for the discharge of the contained coin as described. And this construction, we think, derives added weight from the previous statement in the same paragraph of the specification, that his invention "relates to toys for banks, paperweights and the like." That is, as we construe it, that it relates to toys for banks, to toys for paperweights and the like toys. We do not say—we are not called upon to say—that Mr. Colby did not invent a coin receiver that could not have been protected under proper letters patent; but he has not claimed, as we think, any such invention here. He has limited his claim to toy vehicles provided with the stated mechanism for coin receiving and automatic coin discharging. Under this construction of the claim of the patent, there is no case here for the application of the doctrine of mechanical equivalents. It cannot be contended that the appellant has infringed. His device is simply a coin container consisting of a hollow tube with the mechanism stated. It is not adapted to be used as a toy vehicle, and is not a toy. It is simply a coin container. The judgment will therefore be reversed, and the cause remanded with directions to dismiss the bill.