KELLOGG SWITCHBOARD & SUPPLY CO. v. DEAN ELECTRIC CO. et al.

(District Court, N. D. Ohio, E. D. September 21, 1915.)

No. 9.

PATENTS ☞328—VALIDITY OF—INFRINGEMENT—TELEPHONE TRANSMITTER.

The Dean patent, No. 687,499, for an improved telephone transmitter, as to the claims describing the granule chamber as carried on the diaphragm, is void, for want of novelty in view of the prior art. The remaining claims must be limited to the precise construction described in the specifications, drawings, and claims, and, as so construed, *held* not infringed.

In Equity. Suit by the Kellogg Switchboard & Supply Company against the Dean Electric Company and others. On final hearing. Decree for defendants.

Curtis B. Camp and Jones, Addington, Ames & Seibold, all of Chicago, Ill., for plaintiff.

F. O. Richey, of Elyria, Ohio, M. B. & H. H. Johnson, of Cleveland, Ohio, and Charles A. Brown, of Chicago, Ill., for defendants.

CLARKE, District Judge. In this suit, the bill in which was filed March 4, 1905, infringement is claimed of claims numbered 1, 2, 8, 9, 10, 11, 15, 16, and 17 of letters patent No. 687,499, issued to William W. Dean, dated November 26, 1901, for a claimed improvement of a telephone transmitter. The usual injunction and accounting are prayed for. The defendants deny the validity of the plaintiff's patent, deny infringement, plead that it is manufacturing a transmitter under letters patent No. 793,928, issued to W. E. Harkness, dated July 4, 1905, and further plead public use and sale more than two years prior to the application for the patent in suit.

That Dean came late into the transmitter field of invention, when

it was approaching, if it had not entirely reached, exhaustion, the record abundantly shows, and it also appears that he sought, not so much to produce an improved transmitter, as to construct one which would avoid infringement of satisfactory transmitters already in use, notably the White and Stromberg-Carlson. The patent in suit is a combination patent, confessedly all of the elements used in complainant's transmitter had been long in use when the patent was applied for, and the only claim made in the case in which there is any real substance is described best in claim No. 7 of the patent in suit as:

"The combination with a diaphragm comprising a sheet of material having a portion deflected to form a recess or chamber of an electrode within the chamber and moving with the diaphragm, a stationary support, a second electrode mounted on said support and extending into said recess or chamber, and comminuted material in said recess or chamber between said electrodes, substantially as described."

The inventor declares in his specification that:

The object of his invention is to "provide a telephone which will be simple and compact in structure, and which will effectively prevent packing of the carbon granules, thereby overcoming an objection which is incident to most of the granular telephones as commonly constructed heretofore."

Transmitters using granules of carbon in various forms between the electrodes of the transmitter had been in use for many years before Dean applied for his patent. But it is claimed that the carbon granules tended to adhere together or "pack," with a resulting defective transmission of sound waves, and that Dean's problem was to prevent this or reduce it to a minimum. That he produced a combination of well-known elements which gives good results is admitted, but that it is superior to several which went before is by no means proved. The most that can be claimed for the patent in suit, therefore, is that by a new combination of old elements it produces what is claimed as an improved result. There is much evidence in the record tending to prove that whatever improvement the plaintiff's transmitter possesses is due not more to the adjustment of the granule chamber on the main diaphragm than to improved preparation of the carbon granules and minor refinements in construction.

The 19 claims of the patent in suit may broadly be divided into two classes:

First. Those which describe the chamber containing the granules as integral with the main diaphragm of the transmitter by making use of it as a part of the chamber. The drawings all relate to this form of construction in which the main diaphragm forms one side of the granule chamber.

Second. The claims which describe the granule chamber as "carried" on the diaphragm. Several of these claims describe the "supplemental diaphragm as peripherally connected" with the main diaphragm; but this it seems clear enough was common in earlier transmitters, and as the connection is made in the patent in suit, it can serve no new purpose, since the construction obviously involves also securing this supplementary diaphragm and the rear electrode, its stem and block, to the main diaphragm. That this can give a flexible connection to the supplementary diaphragm, which will contribute to the vibrat-

ing of the entire granule chamber, and so to the preventing of pack-ing, as claimed by one of the plaintiff's experts, seems entirely fanciful.

The complainant clearly recognizes the line of demarcation which we have pointed out between the two sets of claims, and in this suit relies wholly upon the claims which describe the granule chamber as "carried on" the main diaphragm. The expression, "carrying the gran-ule chamber upon the diaphragm," as distinguished from making it a part of the diaphragm when applied to the subject-matter of this suit, must mean, in the opinion of this court, that the granule chamber rests upon or against, or is in a measure supported by, the diaphragm, and not, as defined by plaintiff's expert, Jackson, "in the double sense of supported in position by, or through and of caused to move with," whatever that may mean.

Adopting the meaning which we have given to "carrying the granule chamber upon the diaphragm," it is very clear that the construction described in the second group of claims of the patent in suit was an-ticipated in substance and form in White, No. 485,311, dated Novem-ber 1, 1892, Colvin, No. 513,305, and Stromberg-Carlson, No. 580,434. It is very significant in this connection that an expert so resourceful as Mr. Jackson could not be induced to describe a construction of a transmitter within the claims declared on in this suit, though often pressed by counsel to do so. The suggestion is vehement that he at least thought it was not possible to do so without clearly infringing on earlier patents.

As we have said, Dean, the inventor of the patent in suit, came late into the transmitter field of invention, and the advancement, if there was any advancement, made by him upon what had gone before, was meager, and consisted solely in a slight new arrangement of parts—indeed, it is pointed out in the record with a good deal of plausibility that the Dean patent consists in a mere reversal of the parts of the White patent. Both the Stromberg-Carlson and the White patent had been highly successful commercially before Dean entered the field, and the record shows that the White construction is now much more large-ly used than the plaintiff's, or any other construction; it being the standard of the Bell Telephone Company.

Under these conditions it seems clear enough that the plaintiff should be limited to the precise construction described in its patent, and by this is meant the construction described in the specification and drawings, as well as in the claims, all read in the light of the state of the art to which the invention belongs. Card v. Colby, 64 Fed. 594, 12 C. C. A. 319. This principle, so clearly stated by the Circuit Court of Appeals of this Circuit in D'Arcy v. Staples & Hanford Co., 161 Fed. 733, 88 C. C. A. 606, seems sharply applicable. I cannot bring myself to think that there is sufficient substance in any of the claims to merit attention or discussion, except possibly those which make the diaphragm an integral part of the chamber in which are inclosed the carbon granules between the electrodes, and these are not involved in this suit.

So far as the other claims are concerned (and they are the ones which it is claimed are infringed in this case), I am of the opinion that they are void for want of novelty upon the references already given,

to which may be added Hunnings, 1878, Charollois, and Cousens; No. 609,877. Because these claims are void, of course the claim of infringement cannot be sustained in this case; but it may be said also that, restraining the other claims of the patent to the precise construction described in the specification, drawings, and claims, the transmitter manufactured by the defendant cannot successfully be claimed to infringe the plaintiff's patent, as counsel for the plaintiff insist that it does.

It is not necessary for the court to go further into this case, but I feel that I should express my opinion to the effect that the testimony with respect to the telephones and transmitters found in use at Greeleyville, S. C., manufactured and sold by Mason and introduced as exhibits in this case, show a public sale and use of a transmitter with a granule chamber carried upon the main diaphragm more than two years prior to the application for the Dean patent, even when the most rigid rules as to the burden of proof with respect to such questions are applied. There is no doubt in the mind of this court that the men who described the purchase and use of the three or four telephones at Greeleyville told the truth, and there is every reason to believe the testimony of Mason and Manning, supported as it is by the correspondence and invoices which are in evidence. The impression which the testimony of all of the witnesses named makes upon this court is unqualifiedly that they are honest men, telling the plain truth, and it will be a sad day for the administration of justice when the testimony of witnesses is rejected as untruthful simply because they may have been served with notice that a claim will be made that some article they are manufacturing infringes another's patent; and this is all that is urged to cast suspicion upon men of certainly high standing in business and in the communities in which they live. It is not necessary to a disposition of this case to find that there was a sale and use of the invention as it is described in the claims relied upon in this proceeding, but, if it were necessary, this court would not hesitate to so hold upon the evidence in the record.

The construction covered by the patent under discussion in this case is very simple, and comprises but few elements, yet the case has been permitted by counsel to hang about the courts undecided for 10 full years, and the record has been burdened with more than 1,000 pages by two experts called by the plaintiff. In these 1,000 pages there is scarcely an indication that either witness for a moment looked upon himself as called to candidly enlighten the court as to the few questions really up for decision. Their testimony would have delighted a dialectician of the Middle Ages with its exhibitions of skill in evading giving direct answers, but most of it is of no value at all to a court in seeking to discover where the truth lies between the conflicting claims of the parties. The time this case has been in court and the character of the record suggest very strongly that its purpose was not to secure a speedy settlement of a genuine controversy, but that it was intended rather as a menace, to be held in terrorem over the defendant and others who might have the temerity to enter this all but exhausted field of invention.

231 F.—13

A more appropriate ending to this opinion cannot be made than by quoting from American Stove Company v. Cleveland Foundry Company et al., 158 Fed. 978, 86 C. C. A. 182, in which the Circuit Court of Appeals of this Circuit impressively says:

"We note that more than two-thirds of the nearly 1,000 pages in this record are taken up by the testimony of expert witnesses. * * * As a contest between gentlemen learned in the science of the subject, it might be interesting if one had leisure, though it seems sometimes to run into very attenuated points. * * * It is not the province of witnesses to advocate the cause of the party who calls them, nor to pass upon the questions of law and facts presented by the controversy. Frequently an expert witness may be of much aid to the court in explaining matters which can only be appreciated and understood by learning higher than the ordinary; but his province is to instruct, and not to decide, and even the instruction is of uncertain value when it is colored from standing in the place of a partisan for one of the parties. Usually the testimony of one competent witness on each side is enough to insure a full and fair elucidation of what is recondite in the case. The voice of a single teacher is worth more than a confusion of many tongues. And the expense is worse than useless."

It results from this discussion of the evidence and the authorities that the bill of the complainant will be dismissed, and that the defendant will recover its costs.