NEW YORK ASBESTOS MFG. CO. v. AMBLER ASBESTOS AIR–CELL
COVERING CO.

(Circuit Court, E. D. Pennsylvania. July 18, 1900.)

1. PATENTS—CONSTRUCTION OF CLAIMS.

Definitions and admissions made by an applicant for a patent in the
course of the proceedings in the patent office, in order to avoid the state
of the art as adduced by the office, by differentiating his invention from
those disclosed by the references, are always binding upon him in the
subsequent construction of his patent.

2. SAME—INFRINGEMENT—FIREPROOF MATERIAL.

The Lantzke patent, No. 624,828, for improvements in fireproofing ma-
terial, is limited by the prior art to material produced in the precise man-
ner described, which, as shown by the claims of the patent and by the
statements made by the patentee during the progress of the application
in the patent office, has for its characteristic feature the use of a middle
layer or core of permeable fabric, saturated with an incombustible hard-
ening solution, to either side of which sheets of asbestos are fastened
by being pressed on before the solution hardens. As so construed, *held*
not infringed by material formed by pressing together two sheets of as-
bestos, one of which is coated with the solution, which was well known
and used in the art prior to the patent.

In Equity. Suit for infringement of a patent. On final hearing.

Schreiter & Mathews, for complainant.
H. La Barre Jayne and Fraley & Paul, for respondents.

GRAY, Circuit Judge. This is a patent case, brought for an al-
leged infringement of letters patent No. 624,828, dated May 9, 1899,
and granted to Albert Lantzke, of New York, for improvements in
fireproofing material. The parties to this litigation are both en-
gaged in the manufacture of what is known in the trade as "air-cell
covering." This is insulating, or non heat conducting, covering to
be applied to steam pipes, or other hot surfaces, to prevent the loss
of heat by radiation from the pipe. Air-cell covering is only one
of a great variety of these largely used non heat conducting cover-
ings. The principle of its construction consists in forming a series of
layers of flat and corrugated asbestos paper, alternating with each
other, into a hollow cylinder, which is applied around the pipe. The
corrugated layers form air cells, or spaces filled with confined air,
which is the best nonconductor. There is an incidental advantage
also derived from making the covering of asbestos paper, because the
material itself is not only non heat conducting, but practically fire-
proof. The patent in suit does not claim air-cell covering as such,
but purports to be for a particular sort of composite or compound
asbestos sheet, made out of three layers, which is capable of being
used in an air-cell covering, or in any other structure where asbestos
paper is used. The patent explains two applications or' uses for this
composite asbestos sheet, namely, as a jacket or outer covering for
a pipe covering, the body of which, however, is not shown as made
according to the Shearer construction, but according to a prior in-
vention and patent of Lantzke. The second application is to corru-
gate these compound sheets, and pile them in layers, with the cor-

rugations "crosswise interposed," so as to make a flat asbestos sheet. The defenses are the usual ones, formulated in defendants' brief into four propositions, as follows:

"(1) Defendants' manufacture does not infringe the claims of the patent in suit construed in the light of the specification. (2) A fortiori, defendants' manufacture does not infringe the claims of the patent in suit construed in the light of the definitions, limitations, and admissions which were forced upon and accepted by the applicant in his effort to obtain the patent in suit. (3) Again, a fortiori, defendants' manufacture does not infringe the claims of the patent in suit construed in the light of the prior art; for defendants' manufacture includes nothing but what was old in the art. (4) The patent in suit was improvidently granted for that which was old in the art, and must be held to be void."

The claims of the patent in suit are seven in number, the first five of which refer to the making of the composite fireproofing sheet, and are only different modes of stating the composition described in claim 2, which alone it is necessary, for our present purpose, to quote:

"(2) A fireproofing sheet composed of one layer of fibrous fabric, saturated with an incombustible hardening solution, and of two layers of asbestos material cemented, one on each side, to the layer of fibrous fabric, and firmly compressed together with the inner layer."

Claims 6 and 7 refer to a fireproofing material made out of the sheets composed as described in the preceding claims, by corrugating them, and placing two or more sheets together crosswise, so as to make a corrugated composite sheet, used in one form for pipe covering, and in another as building block for fireproofing partitions and other plane surfaces. The fireproofing qualities of asbestos have long been known, and its use in this respect has been various,— sometimes in the form of loose asbestos fiber or flock, spread over and fastened to the surfaces to be protected, and later in the form of an asbestos paper, of varying thickness, to be applied in the same way. In the record there are set forth numerous instances of this use, and 10 or 12 patents, running through 20 years, are in evidence, in which asbestos paper is used for fireproofing purposes by being cemented to other materials, or to asbestos fiber, or to sheets or layers of asbestos. The corrugation of these sheets so as to make air cells or spaces for the purpose of increasing the nonconductivity of the fabric or sheathing was an old device at the date of the patent in suit. The use of silicate of soda as an adhesive cement for asbestos paper and material was also well known in the art at the date of the patent in suit, as was also the fact that the use of this adhesive served, when dry, to stiffen and thereby strengthen the material to which it was applied. The corrugations referred to were made by passing the material, when moist, through rolls like fluting irons. This was, of course, a well-known device long before the date of the patent in suit. The method of making the composite fireproofing sheet, as described in the patent, is, in effect, to saturate a single sheet of asbestos paper, of the required weight and thickness, or of some other incombustible fabric, with a solution of silicate of soda, and, when so saturated, to place on either side of the saturated sheet an outer sheet of asbestos, and then run the three sheets thus placed through the corrugating rollers. The pressure of the

rollers serves to closely unite the three sheets, and the viscous muci-laginous solution cements the outer layers of asbestos to the inner sheet. This incombustible solution, hardening when dry, also serves to stiffen and make rigid the composite sheet, so that it readily holds the shape into which it has been pressed. This composite corru-gated sheet can be rolled, when in its plastic condition, into a cylin-drical form, for steam pipe covering, and can be made of any required thickness, by superimposing one sheet upon the other. The same composite corrugated sheets, placed crosswise, may be built into blocks of any required thickness, and, with a flat layer of the com-posite asbestos sheet applied to the surface of the block, may be used for fireproof partitions, or protecting other plane surfaces from the effect of exposure to great heat. This composite material is the sub-ject of the sixth and seventh claims of the patent.

It is claimed by complainant that this composite block or fire board so produced, as well as the composite sheets of which it is composed, is a new material in the fireproofing structural art. The claims 6 and 7, however, which wholly concern it, tie it to the previ-ously described and claimed composite sheets of the first five claims; that is to say, the block or fire board of the sixth and seventh claims is required to be made of superimposed layers of the composite ma-terial described in the preceding claims. A careful reading of the specifications and claims of the patent clearly discloses the follow-ing essential elements: (1) A central core, sheet, or layer, variously described in the claims as "a rigid core of permeable fabric"; "one layer of fibrous fabric"; "a sheet of permeable material"; "an inner layer of incombustible fabric"; and "an inner layer of permeable fabric,"—which constitutes the foundation of the composite fireproof sheet claimed to be new in the art. (2) The saturation of this central sheet or core with an incombustible solution, which also has the ad-hesive quality necessary to cement the outer sheets of asbestos there-to. This solution is preferably "silicate of soda." (3) The cement-ing, by means of the saturating solution on the surface of the inner core, of sheets of asbestos paper or fabric thereto. In short, three things are necessary and essential to the patent in suit: (1) A cen-tral and integral permeable sheet or core of incombustible material; (2) a saturating solution applicable thereto; (3) outer sheets or layers of asbestos fabric (preferably), or other incombustible material, ce-mented to either side of the central core. The pressing of the outer sheets on the central core by the corrugating rolls, and the harden-ing of the saturating solution in the central core, make a composite fireproof material sufficiently rigid and hard to maintain any shape impressed upon it. The separateness of this central "core," "layer," or "sheet," and the requirement that it should be saturated through and through with the hardening and cementing solution before the outer sheets of asbestos are applied to either side, are the plainly characteris-tic and differentiating features of the patent in suit. The material or fabric produced by the defendants, and which is claimed to infringe, by its structure, upon the rights secured by this patent, lacks these essential features of complainant's fabric. The fireproofing sheet manufactured by defendants, according to the proofs in the case,

consists of two sheets of asbestos paper, cemented together by a solution of silicate of soda. The method of defendants is to pass one of the sheets of asbestos paper over a roller, to the surface of which silicate of soda has been applied, and, in order that the film of the solution adhering to the asbestos paper may not be in excess of what is required for adhesive purposes, the sheet, after leaving the roll, passes under a scraper, or a knife blade, which removes such excess. To the sheet thus treated another sheet of asbestos paper is applied, and the two are pressed together by being passed through a corrugating roll. All the elements of this product are old in the art, and are not claimed under the patent in suit, to wit, the process of corrugation, the asbestos sheets, the use of the silicate of soda for the purposes referred to, and the uniting of one sheet to the other by the adhesive properties of the solution. There is here no saturation of a central core or sheet, no strengthening filling substance between two sheets of asbestos, or of other fireproof material, and therefore no appropriation of the peculiar and essential features of complainant's product. Complainant claims, however, and its expert witness, with much ingenuity of argument, supports the claim, that defendants' composite sheet, made as just described, does contain a central core or layer, saturated with the hardening solution of silicate of coda. The argument is this: That when the two sheets of asbestos paper are cemented together in the manner described the adhesive solution on the surface of one sheet permeates or saturates both sheets to an appreciable extent; that the fibers on the surface of each sheet, by capillary attraction, absorb sufficient of this solution to constitute, when pressed together and hardened, a central core or layer of incombustible material. It is not claimed that either sheet is saturated, much less that there is any central independent sheet so saturated; but the contention is that the silicate of soda is so taken up by the fibrous surface of each sheet, when the two are pressed together, that they harden into a distinct incombustible central layer. Upon this argument the whole contention of complainant as to defendants' infringement is founded. The fallacy of the argument, however, is apparent. The operation of the adhesive solution upon the fibrous surface of the two sheets, when pressed together, to produce in the middle of defendants' structure an incombustible and measurably rigid film, is the thing complained of. But it is perfectly evident that this inner layer is not and cannot be said to be cemented or united to the outer layers by the silicate. The condition produced is manifestly different, both in the method of production and structure, from complainant's independent thoroughly saturated core or layer of asbestos or other incombustible material. Uniting an asbestos sheet to another surface by silicate of soda is admittedly old in the art; so, also, the uniting of two or more sheets together by the same adhesive solution. That defendants effectuate in some degree the result aimed at by the patent in suit, to wit, the production of a fireproof material sufficiently rigid to maintain the shape impressed upon it, does not necessarily invade complainant's monopoly, the elements of asbestos paper and silicate of soda so used in both complainant's and defendants' product

being old in the art. The state of the art requires that complainant should be held to the precise structure described in the patent. It is only a fair, and not a severe, application of this principle that distinguishes, in the sense of the patent law, the separable and independent layer, sheet, or central core from the condition produced by the partial saturation of the surfaces of the two sheets, when pressed together, by the adhesive film of silicate of soda.

We have so far discussed the question of the alleged identity of the two structures without reference to the disclosure of the file wrapper of the patent in suit. The application for the patent by the assignor of the complainants was the subject of a protracted litigation in the patent office. It appears that the application for the patent was refused by the principal examiner, before whom the original case came for action. The rejection was grounded by the examiner, among other things, upon references to prior patents, notably to the Johns patent, No. 230,945, and to the Merrill patent, No. 367,424; also upon patents to Halpine, No. 200,192, to Johns, No. 433,470, and to Line, No. 333,138; and also, in relation to claims 6 and 7, to the British patent to Lake, No. 18,646. At the close of his opinion, the examiner uses this language:

"In view of the disclosure of the references, the examiner is unable to see that the claims set forth any patentable invention. The materials, arrangement, and treatment are all old and well known, and nothing has been added to the knowledge of the public, nor any substantial advance made in the art."

From this decision an appeal was taken to the board of examiners in chief, and the case was submitted upon elaborate briefs of appellant's counsel. The board of examiners in chief, by a majority of two to one, affirmed the decision of the primary examiner. From this judgment of the board of examiners in chief an appeal was taken to the commissioner of patents, and the case elaborately argued before him by the appellant. The commissioner reversed the decision of the board of examiners in chief, and allowed the issuance of the patent. In according to the patent so issued the presumption to which it is entitled, from the action of the patent officials, we are bound to notice such statements and admissions as were made by the applicant in the course of the proceedings in order to obtain his patent as have any bearing upon the scope of the invention, and on the question of what are the essential features of the patent asked for and granted. Definitions and admissions made by an applicant in order to avoid the state of the art as adduced by the office are always binding on him. Sargent v. Lock Co., 114 U. S. 63, 5 Sup. Ct. 1021, 29 L. Ed. 67. The doctrine of this case, in the respect just quoted, is affirmed in many decisions of the supreme and circuit courts of the United States, and is in accord with sound reason, and the philosophy of the rules in regard to disserving statements made by a party to a suit. The applicant, in his statements in the appeals to the board of examiners in chief and to the commissioner of patents, felt himself compelled, in order to avoid the objections urged to the granting of his patent, and the effect of the references of the principal examiner, to emphasize the necessity of an independent inner sheet, saturated with the incombustible solution, and of outer sheets

NEW YORK ASBESTOS MFG. CO. V. AMBLER ASBESTOS A. C. C. CO.    321

united to the inner by the saturating medium. Accordingly, the applicant, in his argument before the examiners in chief, as to this distinction, used this language (page 73, record, defendants' exhibits):

"If the stated specific and distinguishing features of applicant's invention are disregarded, and only the cementing together of three layers of the same or of different material is considered, as the primary examiner has done, the references would apply, *but the product described in applicant's specification IS NOT THE RESULT OF MERELY CEMENTING TOGETHER OF TWO OR THREE LAYERS of various materials or of a core or foundation sheet and a sheet or sheets of incombustible material applied and secured to one or both sides of the core or foundation sheet.* (The capitals and italics are those of appellant's brief.)

Again, in defining his invention, the applicant says, in his appeal to the board of examiners in chief, that it is—

"A composite sheet consisting of three elements: First, a permeable fibrous sheet, which may or may not be fireproof, must, however, be of sufficient consistency or tensile strength, and capable of being permeated by the second element; second, an incombustible hardening solution; and, third, two sheets of flexible asbestos material, which are united to the first element, forming the core, or, as applicant terms it, 'structural filling,' of the product by means of the same second element, noncombustible and hardening solution, permeating the fibrous sheet."

This statement, literally or in substance, is repeatedly made throughout his argument. At page 73 of the record, defendants' exhibits, we find the following:

"The examiner, in thus stating the distinctive features of the product pointed out in the claims, disregards entirely the nature of the core or foundation sheet, which is distinctively pointed out in the claims, and is set forth in applicant's specification, as one of the main features of his invention."

We also find in the same written argument of the appellant (defendants' exhibit book, pages 17, 18), in distinguishing his invention from that claimed in other patents referred to, the following:

"In the cases of Thomas and of others the cementing material must not be permitted to permeate the fibrous material, whereas in applicant's case this is an essential feature of his invention. This patentee (Thomas) states repeatedly 'that he coats or covers [the layer of hair felt] with silicate of soda' to affix the asbestos sheet to its surface."

Also the same at page 24:

"In the United States patents to Thomas or Merrill it is essential that the solution uniting the layers does not permeate the inner sheet or layer, whereas in applicant's case it is essential that the inner sheet be permeated or filled with that solution to attain the purpose of the invention."

Also the same at page 32:

"Applicant begs to respond that he purposely uses in performing his invention 'fibrous and permeable' material for the core sheet, with the end in view to store a quantity of the hardening solution therein. This is one of the characteristic features of his product, distinguishing it from those cited in the references of record. It is apparent that it would not be possible to embody in the product such a quantity of the hardening solution as is required to render the composite sheet capable of retaining its shape under pressure if the core sheet be only coated with it."

Also appeal to the examiner in chief, at pages 77, 78 (discussion of the Merrill patent).

103 F.—21

Also appeal to the commissioner at pages 112 and 113:

"The cloth or paper used by applicant for the filling or core of his composite fireproofing sheet is not 'coated,' but permeated or saturated with the liquid silicate of soda as explained in the specification and pointed out in the claims. This feature was, as shown by the record, repeatedly urged by the appellant in the proceedings before the principal examiner as one of the distinguishing characteristics of appellant's composite sheet."

Also the same at page 114:

"As it appears from this statement, the understanding of the examiner in chief as to what these claims specify is erroneous in every important particular. The examiner in chief states that the silicate of soda is 'coated on the paper.' Appellant sets forth in his specification, and points out in every one of his claims, that the inner layer or core is saturated or permeated with the incombustible hardening solution."

After these definitions of his invention and admissions made by the applicant in arguing his appeal, the commissioner, in reversing the decision of the board of chief examiners, dwells upon the essential and differentiating character of this separable and saturated core or layer. Alluding to the references upon which the application had been formerly rejected, the commissioner says:

"None of them, however, shows incombustible sheets united by a permeable fabric saturated with an incombustible hardening solution."

If the specifications and claims did not of themselves make clear this essential character of an independent core or foundation layer of permeable fabric, saturated through and through by an incombustible hardening solution, the statements and admissions of the patentee, just quoted, would establish it beyond cavil. The alleged infringement is, as we have seen, a composite sheet, made by cementing together two, and only two, sheets of asbestos paper, with a viscous solution of silicate of soda. The entire absence from this composite sheet of any separable, independent, fully-saturated layer or core, to either side of which asbestos sheets are fastened, distinguishes the defendants' structure from that of the patent in suit, as defined and narrowed, not only by the claims and specifications, but also by the statements and admissions made in the progress of the case through the patent office.

The view thus taken of the question of infringement makes it unnecessary to discuss the other questions raised by defendants as to the novelty of the invention described in the patent in suit. Admitting the patentability of this invention within the lines herein considered, we are nevertheless of opinion that no infringement by defendants has been shown of any of the rights secured by said patent. The bill therefore must be dismissed, with costs.