AMERICAN STOVE CO. v. CLEVELAND FOUNDRY CO. et al.

DANGLER STOVE & MFG. CO. v. SAME.

(Circuit Court of Appeals, Sixth Circuit. January 22, 1908.)

Nos. 1,717, 1,718.

1. PATENTS—INFRINGEMENT—OIL BURNERS.

The Jeavons patent No. 475,401, for an oil burner, claim 1, was not anticipated, and construed in the light of the specification and drawings is valid for the apparatus therein described, the essential feature of which is "a vapor holder constructed for the free and uniform distribution of the vapor therein by gravity," the dominating idea of the invention being to vaporize the liquid used on its entrance into the vapor holder by the

heat of the metal, and to cause the vapor to flow around the burner in a trough by gravity. The invention is not a pioneer one, however, and the patent must be limited in construction to substantially the means described. As so construed, it is not infringed by a burner in which the trough contains a circular flat asbestos wick standing vertically which carries up the oil from the trough; vaporization and combustion, in part, taking place at its upper edge.

2. SAME—CONSTRUCTION OF CLAIMS—LIMITATION BY PROCEEDINGS IN PATENT OFFICE.

An applicant for a patent, who trims away, modifies, and otherwise defines his specification and claims to meet references made by the Patent Office, must be deemed to have surrendered and disclaimed what he conceded, and to have imposed such definitions upon the language of the patent as he attributed to it in order to secure the grant.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 244.]

3. TRIAL—NUMBER OF WITNESSES—TESTIMONY OF EXPERTS IN PATENT CAUSES.

The practice of introducing a large number of expert witnesses in patent causes is not to be commended, one competent witness on each side being usually sufficient to insure a full and fair elucidation of what is recondite in the case. The province of such witnesses is to instruct, and not to decide questions in issue, nor to advocate the cause of the party who calls them.

Appeals from the Circuit Court of the United States for the Eastern Division of the Northern District of Ohio.

For opinion below, see 157 Fed. 562.

Philip Mauro, for appellants.

T. W. Bakewell, for appellees.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. These causes, being similar in all material facts, were heard together in the court below and here. They were suits brought by separate bills against the defendants therein named, respectively, in which the complaint was of the infringement of letters patent No. 475,401, issued to William R. Jeavons, May 24, 1892, for improvements in oil burners. The complainant claimed to be the owner of this patent by assignment. The defendants denied the validity of the patent, and they also denied infringement. The validity of the patent was denied upon the ground that the supposed invention had been anticipated by certain prior patents. The causes were heard in the court below upon pleadings and proofs, and the court being of opinion that the first claim of the patent was valid and infringed decreed for the complainant in both cases, awarding perpetual injunctions, and damages and profits to be ascertained upon a reference to the master, which was ordered. The defendants in each case thereupon appealed.

This patent was the subject of a former suit which came to this court on an appeal from the Circuit Court for the Eastern District of Michigan, wherein it had been held void. But we were of the opinion that the first claim thereof was valid and had been infringed. We therefore reversed the decree, and remanded the cause for further proceedings. Cleveland Foundry Co. v. Detroit Vapor Stove Co., 131 Fed. 853, 68 C. C. A. 233. The fifth claim of the patent was for a process of generating vapor from liquid hydro-carbon and burning it;

but that claim was not relied upon, and we expressed no opinion upon that or any other of the claims than the first. The defendants in the cases before us are other persons than the defendant in the former case, and of course are not concluded by the judgment in that case. But it must be expected that we would adhere to our former opinion upon a record substantially the same.

The claim in question, and principally relied upon here, reads as follows:

"A hydro-carbon vapor burner, consisting of a vapor-holder constructed for the free and uniform distribution of the vapor therein by gravity and having a free opening for the escape of vapor, in combination with perforated combustion-walls, having a flame-space between them in communication with the said holder, substantially as described."

A rude drawing illustrating the invention is shown at page 854 of 131 Fed., page 234 of 68 C. C. A.

Upon the question of the validity of this first claim, the defense that the invention was anticipated is supported by reference to the same patents that were put in evidence for the same purpose in the former case, supplemented by some others, of which a patent to Helme, No. 59,393, granted November 6, 1866, for a hydro-carbon burner, and one to Morrill, No. 55,032, granted in the same year for petroleum stoves, are advanced as being most pertinent. But these latter come no nearer to the Jeavons invention than did those canvassed by us in the former case, and are of no importance, except possibly they may serve as restrictions upon the range of equivalents due to the Jeavons patent, if, indeed, it is entitled to so broad a range as to approach them. We do not consider it worth while to analyze them, though we may refer to them in another place for some particulars. We see no reason for changing our opinion touching the first claim of this patent, either in respect to its validity or its scope. It seems unnecessary to go over in detail the reasons on which our judgment was rested. To sum them up, we held that this claim was too broad if read without qualification; but that in order to save it we might suppose it to refer to the specifications for its interpretation, and being so construed the claim could be held valid for the apparatus described; not that the invention was limited to the exact details of construction, as if there were no equivalents possible, but to those of the kind and character described. We were of opinion that the dominating idea of the invention was to provide means whereby the material employed, whether kerosene or other hydro-carbonaceous liquid, should be vaporized at the place of its entrance into the vapor holder, and thereupon the vapor should flow into and pass around the base of the burner in a trough. The flow of the vapor is induced by the force of gravity, and tends to an even horizontal surface throughout the base of the burner, as does any fluid heavier than air when its way is not obstructed. As the volume of the vapor is increased, its level surface is pressed upward into the combustion chamber as the surface of water in a tube is pressed upward by the pressure of other water let in at the base of the tube by the pressure of a more elevated supply or other kind of force. The theory is that the hydro-carbonaceous fluid is let into the generator drop by drop, and is instantly converted into vapor by the heat of the apparatus, the

heat being communicated through the material of the burner from the combustion chamber. This is the mode of operation within the burner after the action of the burner becomes normal. The initial step of "lighting" it is different, especially when the fluid used is not easily combustible. A small wick, preferably of asbestos, is laid in the bottom of the trough and enough of the fluid is let in to saturate it. Thereupon it is lighted; and the heat generated thereby is communicated to the base of the burner and the walls of the combustion chamber to a degree sufficient of itself to maintain the vaporization of the fluid as the latter comes into the base of the burner. Thereupon the normal process begins, as before explained. What was new in the Jeavons invention, as stated in his first claim, when construed as being for the structure described in his specifications to effect the results stated in the claim, which, as we have said, is the only way in which the claim can be supported, was a construction of the burner which would accomplish such a normal operation as we have described. And as he describes only one organization of means for that purpose, he is restricted to that, or substantially that. The liberality of construction which we think may be given to his claim for the purpose of interpreting it cannot be extended to include all means which might be devised to accomplish even a like result, without such a perversion of the rule applied as would disturb other well-settled doctrines of patent law.

Counsel for the appellee contends that the Jeavons invention was of a primary character, a pioneer in the art, and so is entitled to a broad construction, one as broad as the generality of the language of the claim would include. Evidently this contention is made upon the recognized necessity of construing this claim as covering a wider field than we held in our former opinion it was entitled to, in order to lay the ground for the charge of infringement. It is contended, for instance, that Jeavons was the inventor of wickless burners; that is, of burners in which combustion of the vapor occurs at a place remote from that of the vaporization, and so dispenses with the inconveniences which arise from the use of a wick, such as bad odors from its burning, its uncleanliness, its liability to get out of order, and care of management. No doubt if this contention could be maintained it would considerably enlarge the merits of the invention. That Jeavons was not the first to devise a wickless burner is shown by the recitals of former methods in his specifications. He recites four forms of burners then in use; the third and fourth of these were wickless burners, and the vaporization took place before it reached the place of combustion, as follows:

"Thirdly, by generating the vapor in a suitable retort in which the vapor is subjected to a head or pressure and depending on the artificial pressure in the retort to distribute or feed the vapor. This style of burner is exemplified in the well-known vapor-burner which feeds through a jet-orifice; fourthly, by evaporating or vaporizing gasoline or other light hydro-carbon on an exposed surface by passing a current of air over the same and then feeding the carbureted air to the burner, the old and well-known carbureting devices being of this class."

And in the proceedings in the Patent Office, he distinguishes his own from the third form above mentioned by saying that he locates

a valve between the source of supply of material and the vapor-holding basin. And some of the former patents shown in the record confirm this admission. It did not need invention to locate a valve in the supply pipe to regulate the inflow, when but for it the admission of the oil would be unmanageable. In his application for the patent, Jeavons made this regulating valve an element in all his claims. But it entirely disappeared during the course of the subsequent proceedings. For the present, however, we are only concerned with those earlier structures in the respect that they negative the claim that the Jeavons patent first disclosed a wickless burner. In order to differentiate his structure from those of earlier patents, the patentee expressly states that his own "involves, first, the conversion of the oil into vapor by exposing the oil to a heated surface, and then distributing or conveying the vapor by its gravity to the place or places where or about which the vapor is supplied to the burner and maintains combustion," and in his claim he includes as an essential element "a vapor holder constructed for the free and uniform distribution of the vapor therein by gravity." And this element cannot be ignored. And, indeed, it may be added that without it this first claim would have nothing new in it. And we cannot doubt from what occurred in the Patent Office and the references to earlier patents there made that this first claim was allowed because of that novel feature. Another matter which we should notice before passing to the question of infringement is that the patentee states it to be essential that the vapor in the holder shall be protected from air currents and from premature combustion, and to that end he provides a flange projecting inwardly from the upper edge of the outside wall of the vapor holder. This partly covers the opening from the holder into the combustion chamber and partially closes in the vapor holder, and shields its contents from currents of air from the outside, from whence they would be most troublesome. And again he says, in describing the operation of his device:

"The vapor thus generated being protected from adverse air currents, gravitates," etc.

This flange is shown in the drawings and lettered. If we import the specifications into the claims it would seem that this characteristic of the vapor holder should go with it, as showing what vapor holder the patentee means by his claim. The language of the claim is that the vapor holder shall have a "free opening," but he states that by these words he means "an opening of sufficient area to supply the vapor freely to the burner." So read, and taken in connection with the specifications and drawings, we think the claim means only a "sufficient area" in the opening for the purpose of supplying vapor. We further notice that near the end of his description of the invention the patentee uses this language:

"However the vapor might all be generated outside of the holder A in the duct H, for instance, and the action of the vapor traveling within the holder would be substantially the same when discharged into it, the holder, of course, being heated to prevent condensation."

The effect of this is to broaden this element of the claim so as to make it one for a combination in which the vapor holder includes the

adit pipe, for the patentee insists throughout that vaporization takes place in his vapor holder.

Other considerations which affect the scope of the Jeavons patent arising upon the proceedings in the Patent Office on his application for it will be adverted to in discussing the question of infringement. The applicant had a long struggle in securing his patent, and was constrained to trim away, modify, and otherwise define his specifications and claims to meet the references made by the Office until they were brought within very narrow limits, before his patent would be allowed. He must be deemed to have surrendered and disclaimed what he conceded, and to have imposed such definitions upon the language of the patent as he attributed to it in order to secure the grant. Sargent v. Hall Safe & Lock Co., 114 U. S. 63, 86, 5 Sup. Ct. 1021, 29 L. Ed. 67; Thomas v. Rocker Spring Co., 77 Fed. 420, 23 C. C. A. 211, 47 U. S. App. 125; Dowagiac Mfg. Co. v. Superior Drill Co., 115 Fed. 886, 896, 53 C. C. A. 36; Hale v. World Mfg. Co., 127 Fed. 964, 967, 62 C. C. A. 596; Muller v. Lodge & Davis Machine Tool Co., 77 Fed. 621, 629, 23 C. C. A. 357; Warren v. Casey, 93 Fed. 963, 36 C. C. A. 29; Streit v. Kaiper, 143 Fed. 781, 783, 71 C. C. A. 167; New York Asbestos Co. v. Ambler Asbestos, etc., Co. (C. C.) 103 Fed. 316. It is a corollary of this proposition that if the applicant successfully defends his position and secures the assent thereto of those in the Office having charge of the application, and the patent issues notwithstanding the objection which had at one time been urged, the patent is not subject to diminution on that account. The alleged infringement consists of the manufacture and sale of a burner which has a circular trough at its base like that of the patent. In this is located a circular flat asbestos wick, secured between two perforated metallic strips—all standing in the trough vertically. The lower edge of the wick rests in the bottom of the trough. The wick carries the oil upward, and combustion takes place at its upper edge, where the vapor is formed. Not all the vapor is there made, for the heat in the material of the holder probably assists. Nor is the vapor all burned there, for part of it passes up into a combustion chamber and is there burned. But the general features of the process are as stated. The opening from the trough into the chamber is not contracted, and the vapor passes up without constraint. The oil is admitted into the trough by two opposite inlets located in, or at, the bottom of the trough. The important differences from the patent are these: The vaporization does not take place at the entrance of the oil into the trough of the burner, but after the oil has been distributed through the trough and wick to the upper edge of the latter; there is not the distribution of the vapor by the force of gravity, such as the patent contemplates; there is no other manifestation of gravity than must always occur where two fluids of differing density are present and whose relative movements are free. There is nothing new in this element which is made so much of as an element of this invention, if it means no more than the mere natural tendency of a fluid toward a level surface when brought to a state of rest. There is no contraction at the upper edge of the trough or vapor holder whereby the upward flow of vapor is in part restrained and equal diffusion of the vapor in all parts of the holder compelled. It

might be, though we hardly think so, that upon the face of the patent the flange at the upper edge and on the inside of the outside wall of the vapor holder could be regarded, not as essential, but only desirable. But all doubt upon this subject is removed upon examination of the proceedings in the Patent Office. That characteristic was developed into much prominence, and the applicant repeatedly called attention to it as an important part of his invention, and by it differentiated his own from the structures in former patents. He points out that it performs two essential functions: First, that it excludes currents of air until the vapor reaches the place of combustion; and, second, that it tends to compel the equal diffusion of the vapor in all parts of the holder. It is manifest that the flange is a part of the vapor holder. Again, the first claim of the appellees' patent intends a construction of the vapor holder which will permit of a free lateral flow of the vapor therein. The "strand" of absorbent material which is laid in the bottom of the holder for initial lighting when the material used is of a heavy sort does not appreciably obstruct the lateral flow of vapor, and it is proper to say that, notwithstanding it, the flow is free. But it could hardly be said that, in presence of the appellant's wick supported on either side by a metallic strip, there is a free lateral flow of the contents, and we can scarcely doubt that the provision of more than one adit for the material used is intended to accomplish that more equal dissemination of the material in the holder, which the free flow of vapor in the trough under the influence of gravity in the Jeavons holder is intended to supply. We are therefore brought to a different conclusion in regard to the matter of infringement of the first claim of the patent from that reached in the court below.

Not much has been said by counsel about the fifth claim, which is for the process of the apparatus described in the first. And if the apparatus used by the appellant is so far different from that of the appellee that it does not infringe, the process, which, in mechanics, is merely the exercise of the functions of the machine or apparatus, cannot be an infringement of any right secured by the patent. The conclusion we have reached upon this branch of the case makes it unnecessary to consider the defenses that there has been no disclaimer of the fifth claim, that he was a joint inventor with another, that the invention had already been patented by the same inventor, and of an estoppel which is said to have arisen because of a certain license contract made by the appellee with the appellant and other manufacturers; and we express no opinion upon those subjects.

We note that more than two-thirds of the nearly one thousand pages in this record are taken up by the testimony of expert witnesses, of whom there were 11 or 12, arrayed in about equal numbers on the opposite sides, and the reading of it has imposed upon the court a needless burden. As a contest between gentlemen learned in the science of the subject, it might be interesting if one had leisure, though it seems sometimes to run into very attenuated points. This prolixity seems not so much the fault of the witnesses as a mistake of the counsel. It is not the province of witnesses to advocate the cause of the party who calls him, nor to pass upon the questions of law and facts presented by the controversy. Frequently an expert witness may be of much aid

to the court in explaining matters which can only be appreciated and understood by learning higher than the ordinary; but his province is to instruct and not to decide; and even the instruction is of uncertain value when it is colored from standing in the place of a partisan for one of the parties. Usually the testimony of one competent witness on each side is enough to insure a full and fair elucidation of what is recondite in the case. The voice of a single teacher is worth more than a confusion of many tongues. And the expense is worse than useless.

The decree of the court below will be reversed, with costs, and the bill will be dismissed.