### NATHAN ANKLET SUPPORT CO., Inc., et al. v. CAMMEYER, Inc.

(Circuit Court of Appeals, Second Circuit. February 24, 1920.)

#### No. 147.

Patents ⬗328—For inner sole for shoes void for lack of invention.
   The Nathan patent, No. 873,775, for an inner sole for shoes having variously located pockets for the insertion of filling to correct abnormal tendencies of the foot, *held* void for lack of invention and anticipation in the prior art.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the Nathan Anklet Support Company, Incorporated, and the Arrowsmith Manufacturing Company, Incorporated, against Cammeyer, Incorporated. Decree for defendant, and complainants appeal. Affirmed.

Stephen J. Cox, of New York City, for appellants.

James Love Hopkins, of St. Louis, Mo., and Redding & Greeley, of New York City, for appellee.

Before WARD, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. Letters patent No. 873,775 were issued December 17, 1907, to Benjamin Nathan. Later the patent was assigned by his executors to the Nathan Company on July 31, 1917. The Arrowsmith Manufacturing Company, Incorporated, is the sole licensee. Both corporations have joined in this action against the appellee claiming infringement. The appellants are engaged in manufacturing and selling inner soles or supports. The appellee is a New York corporation engaged in selling the alleged infringing supports. What the appellee sells is manufactured by the Wizard

Foot Appliance Company, of St. Louis, Mo. The appellee's product is made pursuant to the Block patents, No. 1,043,058, No. 1,191,655, and No. 1,127,349. The District Court dismissed the bill on grounds of noninfringement and because the trial judge found that the patent in suit was not sufficiently successful to warrant a liberal interpretation of the claims. The claims in suit are 1, 2, 6, and 7, and are as follows:

"1. An inner sole comprising a plurality of layers secured together and having between the same as a substantially wedge-shaped pocket, which is open along the contiguous marginal edge of the inner sole, and a removable substantially wedge-shaped filling member for said pocket.

"2. An inner sole comprising a plurality of layers secured together and having between the same a plurality of pockets, which are open at the opposite marginal edges of the inner sole and are narrowed toward the longitudinal center of the same, and a removable substantially wedge-shaped filling member, which is adapted to either of said pockets."

"6. An inner sole comprising a plurality of layers with a pocket, which is open along the marginal edge of the insole, and a removable filling member, which is adapted to said pocket and is thicker at its outer than at its inner edge.

"7. An inner sole comprising a plurality of layers secured together and provided between said layers with a pocket, which is open along the marginal edge of the insole and narrows thence toward the longitudinal center of the insole, and a removable substantially wedge-shaped filling member, which is adapted to said pocket, said filling member being thicker at its outer than at its inner edge and narrower at its inner edge than at its outer edge."

The appellants contend that the prior art does not disclose anything tending to limit the scope of the patent in question, and that the inventor has provided improvements relative to inner soles adapted to be worn in shoes and provided with means for adjustably supporting various portions of the bottom of the foot, thus correcting weakness or abnormalities, such as flat foot, metatarsalgia, and Morton's painful toe. The specifications of the patent describe the embodiment in detail and show an inner sole composed of two layers of material secured together, so as to form pockets for wedge-shaped inserts, being for the ball of the foot, or the metatarsal bone, or the instep arch, and for the heel. The two layers of material are not sewn or secured together in the ordinary manner, but are left open at their edges and secured in the interior, so that the pockets thus formed for the reception of the wedges are entirely open at the margin of the insole to receive the wedges, which have every edge substantially coincident with the marginal edges of the insole. The ball, instep, and heel pockets are separated from each other by stitches. They take the form substantially of parallelograms, and thus secure the separation of the pockets and the correct placement for the wedges. The wedges may be of any desired form, and two or more of them may be used in one pocket, if required. It is further provided:

"For example, if the wearer has a tendency to throw his right foot forward and wear out the sole of his shoe at its outside front edge, and by the strain thus produced upon the foot cause callous or corns to develop, by inserting the insert or filling member 41 in the pocket from the corresponding side of the insole, the foot of the wearer is thrown toward the other side, the pressure upon the skin relieved, and the corn or callous soon caused to disappear. Similarly, if the tendency is such that the sole has greater wear im-

posed on its inside front edge, it can be corrected by placing the insert or filling member in the side of said pocket *40* opposite to that hereinbefore mentioned. Again, if the wearer of a shoe finds that the arch of the foot needs an extra support, the insert *42* may be placed in the pocket *50*, provided for that purpose, and at either side thereof, thus furnishing the support required. In a similar manner, the wedge *43* may be inserted in the pocket *60* at the heel of the inner sole, from either side thereof. The location of these pockets in forms of inner sole illustrated herein are merely suggestive. It is obvious that, by varying the position of the stitches employed to unite the lower and intermediate layers of the sole, pockets may be formed at any desired place along the edge of the sole for the reception of an appropriate insert or filling member, and while I prefer the form herein illustrated, yet it is not to be understood that the invention in all respects is restricted thereto."

The inserts are removable and may be made of any devised thickness and placed in different pockets to accommodate the correction required for the wearer's foot. The appellants contend that the fundamental composition of the patent improvements was a support for correcting abnormal tendencies of the foot in every portion thereof, without necessitating a change of supports, or any alteration or adjustment that could be made by a person of ordinary skill and intelligence, and without tools. Thus it is claimed that the inventor's idea has led to a universally adjustable support for all foot troubles, whether located at the ball, instep, or heel, or at two or more of these places.

The art was well and highly developed before Nathan entered the field, and this was best illustrated by what took place in the Patent Office on Nathan's application. The entire description and claims of Nathan were canceled on October 19, 1906. The original description detailed the uses of the inner soles with their variously located pockets, in which wedges were to be seated to increase the thickness of the sole. The new description described the insole as adapted for use without any insert, and the layers of the insole as being of approximately the same size, so as to lie smoothly upon each other when the inserts or filling members were removed. These characteristics were not developed in the original description. The idea of "means" by which this is accomplished is new, and was not contained in the original description. The original description provided for means whereby inequalities in the sole may be provided when needed. No new oath accompanies the new description, and for want of it a patent has been held to be void. Steward v. American Lava Co., 215 U. S. 161, 30 Sup. Ct. 46, 54 L. Ed. 139.

But we think the patent lacks invention, and is therefore invalid. The patent granted to Korwan, No. 632,529, September 5, 1899, shows a marginally open pocket and a removable wedge insert. Nathan acquiesced in this construction, by admission in the Patent Office that Korwan anticipated appellants' first claims, and accordingly withdrew his claims. The patent to Waite, No. 797,243, granted August 15, 1905, has a pocket in the heel lining forming layers, and that pocket receives a wedge-shaped insert. The description of the patent says that the cushion gives a general wedge-shaped section to the completed devices. Both of these patents, we think, anticipated the appellant's invention. Waite shows a Block insert (Block's patent) in a single pocket, in an insole, located at the heel of the shoe.

What Nathan did was to duplicate that pocket and provide for an insert at various other locations. Mere duplication is not invention, but ordinary mechanical skill. Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed. 658; Slawson v. Grand St. Ry. Co., 107 U. S. 649, 2 Sup. Ct. 663, 27 L. Ed. 576. Where the use of one deflecting plate in a lumber sawing machine was old, there is no invention in using two such plates. Dunbar v. Meyers, 94 U. S. 187, 24 L. Ed. 34. Nathan in his claims, as above stated, refers to the inner sole as comprising a plurality of layers secured together and having between the same a substantially wedge-shaped pocket. This is shown in the patent to Waite, No. 797,243. The Waite patent shows an inner sole comprising a plurality of layers secured together and having between them a substantially wedge-shaped pocket, which is open along the contiguous marginal edge of the inner sole, and a removable substantially wedge-shaped filling member for said pocket. At best, for appellants, it may be said that he progressed step by step to the desired result, but not one completed whole; and each is entitled only to the specific form or device which he produces. Each other inventor is entitled to his own specified form, so long as it differs from those of his competitors and does not include theirs. Railway Co. v. Sayles, 97 U. S. 554, 24 L. Ed. 1053. Nathan accepted from the Patent Office a narrower claim than that contained in his original application. This claim, as allowed, must be read and interpreted with reference to the rejected claim in the state of the prior art. It cannot cover that which was rejected by the Patent Office or disclosed by the prior art. Hubbell v. U. S., 179 U. S. 77, 21 Sup. Ct. 24, 45 L. Ed. 95.

Nathan is deemed to have surrendered and disclaimed what he conceded, and to have accepted the language of the patent as it was ultimately granted. American Stove Co. v. Cleveland Foundry Co., 158 Fed. 978, 86 C. C. A. 182. We think that the Nathan alleged invention is but a duplication of what has already been disclosed by the prior art, and is not sufficient to support the claim of invention.

The decree is affirmed.