## TOWNSEND et al. v. LORRAINE.

(District Court, S. D. California, S. D.   September 11, 1922.)

No. E–113.

1. **Patents ⫸168(2)—Patentee bound by acquiescence in limitation of claims.**

   A patentee, required by rulings of the Patent Office to modify and restrict his claims to obviate anticipation by previous patents, is bound by the limitations he thus imposes on such claims.

2. **Patents ⫸177—Combination patent limited by elements claimed.**

   Where a patent is for a combination of parts, the claims must be limited to a combination of all the elements included in the claims as necessarily constituting that combination.

3. **Patents ⫸62—Oral testimony of anticipating device must be clear and convincing.**

   Oral testimony of witnesses, speaking from memory only in respect to structures claimed to anticipate, physical evidence of which is not produced, is very unreliable, and must be so clear and satisfactory as to convince the court beyond reasonable doubt to be accepted as establishing anticipation.

4. **Patents ⫸328—1,269,134, for oil and gas separator, held valid and infringed.**

   The Trumble patent, No. 1,269,134, for an oil and gas separator, *held* entitled to a fairly liberal construction; claims 1 to 4 *held* infringed, and claim 13 not infringed.

In Equity. Suit by Francis M. Townsend and others, doing business under the firm name of Trumble Gas Trap Company, against David G. Lorraine. Decree for complainants.

Frederick S. Lyon, Leonard S. Lyon, and Frank L. A. Graham, all of Los Angeles, Cal., for plaintiffs.

Charles Bagg, of Los Angeles, Cal., for defendant.

WOLVERTON, District Judge. Complainants are the rightful owners of a patent on a crude oil and natural gas separator, No. 1,269,134, issued June 11, 1918, application for which was filed November 14, 1914, and claim that the same has been infringed by defendant's reissue patent of November 8, 1921, No. 15,220, and an apparatus recently constructed of somewhat similar design. The defendant does not question the validity of complainants' patent, but claims that he does not infringe, for two reasons: First, that complainants are estopped, by reason of the proceeding before the Patent Examiner, from claiming any other means than that which spreads the whole of the incoming oil, gas, water, and sand upon the walls of an expansion chamber in a thin film; and, second, that, in view of the state of the art at the date of complainants' patent, they are precluded from claiming any other form of structure than that set out and described in the drawings and specifications accompanying such application.

⫸For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The claims of complainants' patent which it is thought have been infringed are 1, 2, 3, 4, and 13. The first claim reads:

"In an oil and gas separator, the combination of an expansion chamber arranged to receive oil and gas in its upper portion, means for spreading the oil over the wall of such chamber to flow downwardly thereover, gas take-off means arranged to take off gas from within the flowing film of oil, an oil collecting chamber below the expansion chamber, an oil outlet from said collecting chamber, and valve-controlled means arranged to maintain a submergence of the oil outlet."

Claim 2 varies from claim 1, so far as it is necessary to indicate, in that it comprises:

"Means within the chamber adapted and arranged to distribute the oil over the wall of the chamber in a downwardly flowing film, gas take-off means arranged to take gas from within the envelop of downwardly flowing oil, and means for maintaining gas pressure upon such oil."

So of claim 3:

"The combination of an expansion chamber having a surface adapted to sustain a flow of oil thereover in a thin body, means for distributing oil onto such surface, pressure maintaining means arranged and adapted to maintain a pressure on one side of the flowing oil."

And of claim 4:

"Means for maintaining pressure within the chamber, * * * means within the chamber adapted to cause the oil to flow in a thin body for a distance to enable the gas contained and carried thereby to be given off while the oil is subjected to pressure."

Claim 13 includes:

"An imperforate spreader cone, having its apex pointing upwardly, located inside said chamber in such a manner as to spread a thin film of oil over the inner wall of said chamber."

Turning to the file wrapper showing the proceedings before the Examiner, claim 1 as made in the application contains the element:

"Means for reducing the oil into a finely divided condition to reduce the tension on the gas contained therein."

Claim 2:

"Oil-dividing means arranged in the expanding chamber to reduce the oil to a thin filmlike condition."

Claim 3:

"Gas-freeing means, consisting of means to reduce the oil to a thin film arranged within the expanding chamber."

And claim 4:

"A cone arranged near the top of such chamber to receive the incoming oil and spread it over the wall of the chamber in a thin filmlike form."

When the application came to the Examiner, claims 1, 2, and 3 were each rejected on the application on the patents of Barker and Bray, and 4 on patent of Bray. The action of the Examiner induced the petitioner to add the following to his specifications:

"It will be noted that the action upon the oil while flowing down the wall of the expansion chamber in a thin film under pressure permits the free, dry

gas to readily escape therefrom, while the pressure exerted upon the oil sur-
face backed by the wall of the chamber holds the lighter liquids, such as gaso-
line, in combination with the oil body, and I desire to be understood as
pointing out and claiming this action as being of great benefit to the crude oil
derived from the well, on account of keeping the gasoline series in combina-
tion with the main body of oil."

Also to cancel claims 1, 2, and, 3, and to insert claims 1, 2, 3, and 4
as now contained in the issued patent. The Examiner again rejected
claims 1 to 4, inclusive, on patent of Bray, and 5 to 13, inclusive, were
held not to patentably distinguish from Bray, and accordingly were
rejected. In response to these objections, the applicant added claims
13 and 14 as now contained in the patent, As presented, the Examiner
again rejected claims 14 and 15, being claims 13 and 14 in patent, also
claims 1 to 13, inclusive, as not to patentably distinguish from refer-
ences of record. The applicant replied to the action of the Examiner,
stating, among other things, that the "applicant's invention consists of
a containing vessel, an imperforate cone adapted to spread the whole
body of the oil to the outer edge of the vessel, and means for taking
off gas from the interior of the cone near the center of the vessel"; this
to distinguish from the Bray patent. He says, further:

"Moreover, Bray does not take off his gas below his screens, and the claims
of Trumble are quite specific in stating that the gas is taken off inside the
cone."

The matter coming again before the Examiner, on reconsideration,
all the claims were allowed as contained in the patent. Claim 9 (origi-
nal claim 8) was rejected, as met by patent of Bray, and has been
eliminated from the patent.

[1, 2] A patentee, where he is required by the rulings of the Patent
Office to modify and restrict his claims, to obviate anticipation by pre-
vious patents, is bound by the limitations he thus imposes upon such
claims, and, where the patent is for a combination of parts, his claims
must be limited to a combination of all the elements which he has in-
cluded in his claims as necessarily constituting that combination.
Phœnix Caster Co. v. Spiegel, 133 U. S. 360, 368, 10 Sup. Ct. 409,
33 L. Ed. 663; New York Asbestos Mfg. Co. v. Ambler Asbestos A. C.
C. Co. (C. C.) 103 Fed. 316. And it was said in Roemer v. Peddie, 132
U. S. 313, 317, 10 Sup. Ct. 98, 99 (33 L. Ed. 382):

"When a patentee, on the rejection of his application, inserts in his specifi-
cation, in consequence, limitations and restrictions for the purpose of ob-
taining his patent he cannot after he has obtained it, claim that it shall be
construed as it would have been construed if such limitations and restric-
tions were not contained in it."

See, also, National Hollow Brake-Beam Co. v. Interchangeable
Brake-Beam Co., 106 Fed. 693, 714, 45 C. C. A. 544, 565, where the
court adds:

"But this is the limit of the estoppel. One who acquiesces in the rejection
of his claim because it is said to be anticipated by other patents or references
is not thereby estopped from claiming and securing by an amended claim
every known and useful improvement which he has invented that is not dis-
closed by those references."

Two thoughts were uppermost with the patentee in making the changes indicated: First, to avoid the objection with reference to Barker and Bray with means for reducing the oil into a finely divided condition; and, second, to confine the oil in its flow down a wall or surface with maintained pressure meanwhile. The theory of the patentee is obviously that, pressure being maintained, the dry gas will readily escape from a thin film or body of oil passing down and against a wall or other surface, without at the same time taking off the lighter liquids, such as gasoline, which will yet remain in the crude oil and add to its value.

The limitation and restriction which the patentee has imposed upon his patent must be gathered from his addition to his specifications and the claims which were finally approved by the Examiner. He says in the added specification that the free, dry gas readily escapes, while the pressure exerted upon the oil surface, backed by the wall of the chamber, holds the lighter liquids in the oil body. In his claims, however, he asserts a broader scope for his invention, as in claim 3, which comprises:

"The combination of an expansion chamber having a surface adapted to sustain a flow of oil thereover in a thin body, means for distributing oil onto such surface, pressure maintaining means arranged and adapted to maintain a pressure on one side of the flowing oil."

All this was approved and allowed by the Examiner. Construing the whole together, the added specifications and the claims, I am impressed that the patentee is not confined to means causing the oil to flow down the outer wall of the chamber, but that his patent includes any means that will cause the oil to flow down any surface as well, such as a baffle plate or inner partition or wall, which is reached after the emulsified oil enters the chamber. I think, therefore, the patentee is not estopped by the proceedings before the Patent Office to insist upon the broader claims.

Now, as to the state of the art: Defendant makes no question as to the validity of complainants' patent, and does not rely upon any anticipation for defeating it. The point he makes, therefore, as to what must be accomplished by a combination device would seem to be irrelevant. The question remains: Are the elements of complainants' device so restricted, in view of the state of the art, as to subject them to so narrow a construction as to limit them to the very means shown by the drawings and specifications in patent?

The complainants' patent contains a cone device near the top of the upper chamber, with its lower rim extending in its full circumference in close proximity with the wall of the chamber, with no gas take-off above the cone, so that the entire emulsified body flows down the wall; the gas to be taken off below the cone. Defendant's patent, referred to in counsel's brief as "Model 1," has an inner partition set away from the wall on one side more than one-third of the distance of the diameter of the chamber, and extending below the oil level. To this partition, at some distance from the top of the chamber, is attached a baffle plate extending downward on an incline of perhaps 45 degrees,

and to within an inch and a half or two inches from the wall for the entire segment cut off by the partition. The oil inlet, consisting of a pipe, extends downward to within a short distance of the baffle plate. The pipe has two openings, so that the stream of oil is divided and projected on the baffle plate in two directions laterally. The device is provided with a gas take-off above the partition and one from underneath the baffle plate; all to pass off eventually from the upper portion of the major chamber.

Model 2 contains a like partition to that described in model 1. The oil inlet consists of a pipe extending into the side of the minor chamber, supplied with what is called a nipple, bell-shaped, to allow the oil to spread when discharged into the chamber. The nipple is set at an angle with and extended within proximity of the inner wall, the effect of which is, when the oil is discharged into the chamber, to carry part of it down the inner partition wall, part down the outer wall, at and near the intersection of the inner with the outer wall, and part of it down by gravity without reaching either wall. The device is provided with a gas take-off above the nipple.

This sufficiently describes the models to make the application later. I may add further that the nipple in the model in evidence is machined off on one side to sit closely against the partition wall. Defendant says this was done through mistake in setting the nipple, the mechanic having allowed it to extend too far inwardly. If this is true, it only shows how easy it is to set the nipple in without discovery. But we are dealing with the model in evidence, which complainants say infringes their patent.

The patents introduced as showing the prior art are readily disposed of. Exhibits E, the McIntosh patent, F, the Taylor patent, G, the Barker patent, and J, the Newman patent, all inject the oil from the well in the form of a spray, having the effect to reduce it to a finely divided condition, and the gas is thus permitted to escape. None of them are provided with baffle plates, except Newman, but the oil does not reach them except as sprayed upon them, and I think none of these patents contains the element in combination of pressure within the chamber. All these patents are obviated in their evidentiary effect by the restrictions of complainants' specifications and claims as made before the Examiner. Exhibit H, the Bray patent, is subject to the same criticism. The oil is there precipitated upon perforated cones, and only slightly, if at all, flows down the wall of the chamber or other surface. Exhibit I, the Cooper patent, injects the crude oil tangentially to the wall of the chamber, and causes it to flow down the wall more or less, and the gas escapes upwardly and passes out in a take-off at the top of the chamber. But this patent in combination contains no element of pressure. It must be observed that we are dealing with a combination patent, and all the elements must be read with reference thereto.

[3] Trout, in his testimony and by a drawing submitted by him, exhibits a trap having a chamber into which the oil is injected tangentially to the outer wall, but provided with a sleeve, which allows the gas to escape upward from a segment at the upper part of the sleeve, and

baffle plates are provided above, which can only have the effect to deflect the gas as it passes upwardly and thence outwardly by the gas outlet. This trap, as described, had the element of pressure. The testimony is not persuasive, however, as no drawings were presented, although, as witness testifies, some of them are in existence. The device was called the Durward trap, after the superintendent of the property, who constructed the trap. Durward himself was not called, although accessible. The trap was never patented, and fell into disuse. In Parker v. Stebler, 177 Fed. 210, 101 C. C. A. 380, it is laid down that:

"The courts have recognized the rule that the oral testimony of witnesses speaking from memory only in respect to past transactions and old structures claimed to anticipate a patented device, physical evidence of which is not produced, is very unreliable, and that it must be so clear and satisfactory as to convince the court beyond a reasonable doubt before it will be accepted as establishing anticipation."

See, also, Diamond Patent Co. v. S. E. Carr Co., 217 Fed. 400, 402, 133 C. C. A. 310.

The testimony of Swoap and of Wharff is subject to the same criticism. Respecting Exhibit C, which is a pamphlet entitled "Traps for Saving Gas at Oil Wells," written by W. R. Hamilton, it was issued by the Bureau of Mines, at the Government Printing Office, in 1919, and treats largely of traps for separating gas from oil, and by illustration presents many traps, from the most primitive to the more complex and modern; some having the element of pressure in combination. The document is not certified as official. The statements it contains in regard to the elements of the traps exhibited lack the solemnity of an oath, and the opposing party is deprived of the opportunity of cross-examination. I was inclined to admit this document as competent evidence at the trial, and did admit it subject to further consideration. I am now convinced, however, that the document is not admissible. If admissible, it could have no greater weight than the testimony of a witness speaking to the facts therein narrated, and could not be of compelling force, under the rule announced by the two authorities last above cited.

[4] It is argued that the principle of subjecting oil to pressure, for the purpose of keeping lighter hydrocarbons in solution in the oil while the dry gas constituent separates from the body of the oil, is old; but this overlooks the theory of complainants that they have discovered a more efficient way of separating the gas from the oil, whereby a greater proportion of oil value is secured than had theretofore been derived by the use of any trap in existence or previously operated. Utility has been abundantly proven by the success achieved by complainants' device.

The defendant's trap, model No. 1. infringes, in that the baffle plate furnishes a surface down which the oil flows, with pressure against the oil, by which the gas escapes from the oil and passes out of the chamber by the take-off. So of defendant's device, model 2, the oil is injected, in part at least, against the partition, as well as against the chamber wall, so that it flows down thereon with pressure on the moving oil, from which the gas escapes. While part of the oil is reduced to a spray which falls by gravity to the settled fluid below, its action does

not obviate the objectionable feature of a part flowing down the partition and a part down the wall. I am of opinion also that defendant's trap will likewise infringe with the nipple constructed, as he claims it should be, according to drawings and specifications.

I find that defendant's patent infringes claims 3 and 4 of complainants' patent, that his model No. 2 infringes claims 1 to 4, inclusive, and that claim 13 is not infringed. Complainants will have a decree accordingly, and the cause will be continued for an accounting.