## MARSHALL & STEARNS CO. et al. v. MURPHY MFG. CO. et al.

(Circuit Court of Appeals, Ninth Circuit. October 28, 1912.)

No. 2,117.

1. PATENTS (§ 328*)—INFRINGEMENT—APARTMENT WALL FURNITURE.

The Jordan patent, No. 892,668, for an improvement in apartment wall furniture, consisting of a door or panel centrally pivoted at the top and bottom in the wall of an apartment, so as to be turnable on a vertical axis, having on one side a bed hinged at the bottom, so that it may be folded to stand vertically when not in use, and on the other side an article of furniture, such as a wardrobe or book case, as limited by the prior art and the proceedings in the Patent Office, is not infringed by the device of the Murphy patent No. 1,007,596, for a disappearing bed, which consists of a door hinged at the side, upon the back of which there is mounted a bed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. PATENTS (§ 168*)—CONSTRUCTION—EFFECT OF PROCEEDINGS IN PATENT OF-
FICE.

The rule that a patentee, who has acquiesced in the rejection by the Patent Office of broad claims and limited the same, cannot claim the benefit of the rejected claim, is not affected by the fact that the rejection was upon an interference, and that the interfering application has been withdrawn or abandoned.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 243½, 244; Dec. Dig. § 168.*

Conclusiveness and effect of decisions of Patent Office in proceedings on application, see note to Novelty Glass Mfg. Co. v. Brookfield, 95 C. C. A. 530.]

Appeal from the District Court of the United States for the Second Division of the Northern District of California; William C. Van Fleet, Judge.

Suit in equity by the Marshall & Stearns Company and Charles R. Jordan against the Murphy Manufacturing Company and William L. Murphy. Decree for defendants, and complainants appeal. Affirmed.

Charles E. Townsend, of San Francisco, Cal., for appellants.

John H. Miller and Wm. K. White, both of San Francisco, Cal., for appellees.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge. From the decree of the court below, dismissing the appellant's bill, on the ground that the appellees had not infringed the letters patent sued upon, the present appeal is taken.

[1] The appellant's letters patent No. 892,668 were issued on July 7, 1908, to Charles R. Jordan, for an improvement in "apartment wall furniture," the object of which is to provide a means whereby an ornamental article of furniture or other fixture may appear within an apartment during the day, and which may be reversed to present a bed or couch to be occupied at night. The structure consists of a door or panel centrally pivoted at the top and bottom, in the wall of an apartment, so as to be turnable upon a vertical axis. It carries upon one side a bed hinged at the bottom, so that it may be folded to stand vertically against one side of the door when not in use. On the other side is attached an article of furniture or ornament, such as a wardrobe, a mirror, a bookcase, or a mantel with a gas grate below. Such furniture will appear in the apartment during the daytime; at night, upon reversing the panel, the furniture will disappear into a recess or small adjoining room, and the bed will appear in the room, there to be dropped into horizontal position for use. The peculiar features of the invention are the stops, which are described as follows:

"The door or carrying structure, 2, has a projecting stop, 15, which, when the door is turned in one direction, contacts with the corresponding edge, 16, of the opening in the wall, A. The opposite edge swings freely through the opening upon the other side to allow the device to be reversed; but, when in the position just described, the vertical joint may be concealed by a strip, 17, which is hinged as shown at 18, so as to be partially turned around, and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

its outer face, when thus turned, forms a stop against which the part, *15,* is arrested when the device has been reversed. This structure is locked in either position by means of a foot lever, *19,* having an upturned end furnished, which engages an opening in the bottom of the door, *2,* and which is made to normally engage such an opening by the action of a spring, *21.*"

The structure which is alleged to infringe is covered by letters patent 1,007,596, issued October 31, 1911, to W. L. Murphy, for "disappearing bed." This invention makes use of an ordinary door in the wall of an apartment, hinged at the side, upon the back of which there is mounted, upon a panel attached to the door and spaced away therefrom a sufficient distance to allow proper clearance, a full-sized bed. The panel and the bed necessarily extend beyond the inner or hinged edge of the door, for upon a door three feet wide there is mounted a folding bed four feet wide. When the door is closed, it appears an ordinary door, or it may carry a fixed mirror or a picture. Obviously it cannot carry a mantel, or a bookcase, or a gas grate, or any bulky article to prevent the door swinging around against the wall when opened. When the door is thus opened, the bed extends about two-thirds of the way across the door opening. To close the space thus left open, Murphy uses a small swinging door, which is mounted on the bed panel. When the bed is down, and the small door is closed against the door jamb, it is at an angle with the wall. It furnishes a door which may be opened to allow passage into the adjacent closet or recess.

The appellant contends that the court below erred in finding that the Murphy invention does not infringe claims 2 and 8 of the Jordan patent. Claim 2 is as follows:

"A wall attachment for apartments, consisting of a door or structure having central pivots at top and bottom, and turnable in an opening in the wall, stops by which a joint is formed with the edges of the door when turned in either position, and a latch by which the door is locked."

Jordan was not the first to invent a reversible door mounted on centrally located pivots; nor was he the first to attach a bed or other article of furniture to a door, reversible or otherwise. The patent to Elias Hines, of January 8, 1895, discloses a door turning upon pivots centrally located at the top and bottom, and furnished with stops. The patent to W. C. James, of July 10, 1906, describes a door pivotally mounted "to swing on a vertical axis midway of its width, so that it can be turned completely around, bringing the stove, which is supported on one side thereof, into either one of the apartments at will." In the patent to W. C. James, of May 20, 1902, there is described a mantel and bed attached to opposite sides of a horizontally pivoted door, and also a gas stove and combination table and chair attached to a door hinged at one side. The features in the Jordan invention, on which he obtained his patent, are the ingenious stops which he devised. These are stops, as described in claim 2, by which "a joint is formed with the edges of the door when turned in either position." These stops are so constructed that the reversible door can be completely reversed in the opening, so that in either position it occupies the same space and forms joints with the edges of the opening. This

could not be done, but for the use of the foldable stop used at one of the sides of the opening. Without this foldable stop, the door could not be completely reversed, but would stand at an angle to the face of the opening, making it impossible to form joints with the edges of the door when reversed.

Now, referring to the language of claim 2, we find that the Murphy invention has no pivots, central or otherwise, at top and bottom, is not turnable in an opening in the wall, and has no stops by which joints are formed with the edges of the door when turned in either position. A hinge, it is true, is in a certain sense a pivot, and in most cases of infringement it would be unimportant whether a hinge or a pivot were used, and the substitution of one for the other in a combination claim would not avoid infringement. But the difference between the hinge and the pivot is important in the present case, as marking the distinction between the two inventions. The appellees, indeed, might use pivots, instead of hinges; but it is obvious that the complete reversibility of the appellant's device could not be accomplished by the use of hinges. A hinge would not permit complete reversibility. Nor does the Murphy door or structure have central pivots at top and bottom. All of the door or structure which appears in the room in which the bed is intended to be used is hinged at the side of the door. It is only with reference to the door in connection with the bed structure attached to the opposite side thereof, and not to the door itself, that it may be said that the structure is not hinged at the side. But even then it cannot be said to be centrally pivoted, if regard be had to the ordinary use of words, for the hinges are at a substantial distance from the center. Nor is the Murphy structure turnable in an opening in the wall, in the sense in which the phrase is used in the claim. The structure turns through, rather than in, an opening in the wall.

But, whatever may be said of the other elements of the claim, it is clear that Murphy dispenses with the use of "stops by which a joint is formed with the edge of the door when turned in either position." When the Murphy door is opened, to bring the folding bed into the room where it is to be used, joints are not formed thereby with the edges of the door. Conceding that the small door, which is used to close the opening at one side of the structure, may be designated a stop, there is upon the opposite side no stop forming a joint, nor is there a joint. The door is swung back until it touches the wall, or a buffer attached to the wall, to protect it against injury from the door-knob.

Claim 8 is as follows:

"A wall attachment for apartments, consisting of a door or structure having central pivots at the top and bottom, and turnable in the wall opening, an article of furniture fixed to one side of the said structure, a bed hinged to the opposite side of the structure, turnable to stand in a vertical or horizontal position, and a latch by which it is engaged and held in its vertical position, to be revoluble with the door about its vertical axis."

This claim not only calls for a door or structure having central pivots, and turnable in a wall opening, elements which, as we have seen,

are not found in the Murphy invention, but it adds the element of a latch, which is not found in the Murphy invention, a latch by which the bed is engaged and held in its vertical position, in order to be revoluble with the door. Instead of using a latch to maintain the bed in its vertical position, Murphy accomplishes that result by mounting the bed on pivots, which are placed at such a distance from the door that, when the bed is raised to a vertical position, the force of gravity causes it to lean against the door and holds it in place.

[2] It is contended that claim 8 should receive a liberal construction, that it should be held to cover any means for holding the bed in a vertical position, and that the device by which Murphy holds the bed in its upright position should be deemed the equivalent of the latch which is used by the appellants. The contents of the Jordan file wrapper are such, however, as to leave no room for such a liberal construction of that element of the claim. During the pendency of Jordan's application for a patent, an interference was declared on account of three other applications then pending, one of which was that of John Cilek filed November 15, 1905. Cilek's invention is identical with that of Jordan, except that the door was operated by central pivots to swing in a horizontal plane, and hinged leaves were attached as stops to cover and conceal the clearance spaces at the sides of the structure. The bed was held in an upright position by gravity, as in the Murphy patent. Jordan's original claims had omitted the element of the latch. The interference was decided in Cilek's favor, and by reason thereof Jordan, on March 9, 1908, canceled certain claims of his original application, and substituted the more limited claim 8 for the combination, embodying therein, as one of the elements, the use of the latch. Cilek's application was subsequently abandoned, and no patent was ever issued thereon.

It is claimed that by reason of such abandonment there is in law no anticipation of Jordan's combination, and that, therefore, he is entitled to the liberal construction of his patent which would be applicable if his original claims had been allowed. This proposition cannot be sustained. Acquiescing in the rulings of the officers of the Patent Office, Jordan, in order to obtain his patent, limited his claims, and it can make no difference with the result that the interfering application was withdrawn or abandoned. The limitations so imposed cannot be disregarded. Lapham-Dodge Co. v. Severin (C. C.) 40 Fed. 763; Thomas v. Rocker Spring Co., 77 Fed. 420, 23 C. C. A. 211; Hale v. World Mfg. Co., 127 Fed. 964, 62 C. C. A. 596; Plecker v. Poorman (C. C.) 147 Fed. 530; American Stove Co. v. Cleveland Foundry Co., 158 Fed. 978, 86 C. C. A. 182; Johnson Furnace & Engineering Co. v. Western Furnace Co., 178 Fed. 819, 102 C. C. A. 267; Morgan Envelope Co. v. Albany Perforated Wrapping Paper Co., 152 U. S. 425, 14 Sup. Ct. 627, 38 L. Ed. 500. In the case last cited, Mr. Justice Brown said:

"But the patentee having once presented his claim in that form, and the Patent Office having rejected it, and he having acquiesced in such rejection,

he is, under the repeated decisions of this court, now estopped to claim the benefit of his rejected claim, or such a construction of his present claim as would be equivalent thereto."

We find no error in the decree of the court below. The decree is affirmed.