## RIP VAN WINKLE WALL BED CO. v. MURPHY WALL BED CO. et al.

(Circuit Court of Appeals, Ninth Circuit. October 13, 1924. Rehearing Denied November 17, 1924.)

No. 4214.

1. **Patents ⊚⟹324(5) — Order for injunction pendente lite in infringement suit will be reviewed where there has been full hearing of case upon merits.**

Rule, that review of order granting preliminary injunction in infringement case is limited to inquiry whether District Court abused its discretion, is subject to qualification that, where order is entered upon full hearing upon merits and appeal brings up entire case for determination, order will be reviewed and determined accordingly.

2. **Patents ⊚⟹82—Anything disclosed, but not claimed, is dedicated to public.**

Anything disclosed, but not claimed, is dedicated to public.

3. **Patents ⊚⟹328—No. 13,428, claims 9, 10, 13, 14, for wall bed, held not infringed.**

Murphy reissue patent, No. 13,428, claims 9, 10, 13, and 14, for a wall bed held not infringed.

Appeal from the District Court of the United States for the Third Division of the Northern District of California; John S. Partridge, Judge.

Suit in equity by the Murphy Wall Bed Company and another against the Rip Van Winkle Wall Bed Company. From an order (295 Fed. 748) granting a preliminary injunction pendente lite in a suit for infringement of patent, defendant appeals. Reversed, with directions to dismiss complaint.

A. W. Boyken and Jones & Dall, all of San Francisco, Cal., for appellant.

William K. White and Charles M. Fryer, both of San Francisco, Cal., for appellees.

Before GILBERT, HUNT, and MORROW, Circuit Judges.

MORROW, Circuit Judge. Plaintiffs (appellees here) brought suit in the lower court against defendant (appellant here) for the alleged infringement of plaintiffs' patent for improvements in concealed or disappearing beds. The original number of plaintiffs' patent is 1,007,596 dated October 31, 1911; a reissued patent numbered 13,428 is dated June 11, 1912, and is the patent in suit.

On April 8, 1911, W. L. Murphy filed an application for other improvements in disappearing beds. The patent issued June 18, 1912, upon this application, is numbered 1,030,201. The patent is not in suit, but the disclosure therein has a bearing on the question involved in this suit.

Plaintiff Marshall & Stearns Company is the licensee under the patent for Northern California.

The reissued patent No. 13,428 contains fourteen claims. The complaint charges the defendant with the infringement of only four of these claims, namely, claims 9, 10, 13, and 14; but the controversy turns upon the elements of the combination of bed structure described in claims 13 and 14 as compared with and differentiated from the elements of the combination of bed structure described in claims 9 and 10 and defendant's bed structure.

In these claims and following papers we italicize, for convenient reference, the essential elements of the combination of bed structure in controversy as follows:

"9. In combination with *a wall having an opening, a bed of greater width than said opening, and pivotal means for connecting the wall, at one vertical side of said opening,* and the bed whereby, in the horizontal movement of the bed through said opening on said pivotal connections, different portions of the bed swing therethrough at different times.

"10. In combination with *a wall having an opening, a bed of greater width than said opening, and pivotal means for connecting the wall, at one vertical side of said opening,* and the bed intermediate of the sides thereof. * * *

"13. In combination with *a wall having an opening, a bed pivoted on a vertical axis adjacent to one side of said opening* and intermediate between the sides of the bed.

"14. In combination with *a wall having an opening, a bed comprising a part pivoted on a vertical axis adjacent to one side of said opening* and intermediate between the sides of the bed, and a folding bed frame adapted to swing upward upon a horizontal axis."

The answer denies the allegations of the bill of complaint. The validity of plaintiff's reissue patent is, however, not attacked. No special defenses are pleaded, and defendant relies solely on the general issue of noninfringement.

After the filing of the bill of complaint and answer, plaintiffs moved the court for a preliminary injunction supported by affidavits. The affidavit of Hubert G. Prost qualifies himself as an expert in writing descriptions of machines and processes of all kinds, in studying and comparing patent disclosures, and in comparing and differentiating machines of practically every description. He states that he is familiar with plaintiff's

1 F.(2d)—43

reissued patent in suit; that it discloses *"a bed adapted to be moved about a vertical axis through an opening and shifted laterally in respect to such opening when at the rear thereof and when at the front thereof."*

This, he says, is the *broad idea* of the Murphy patent and is found expressed in claims 13 and 14. He identifies an exhibit illustrating a bed offered for sale by the defendant and finds the Murphy invention embodied therein.

William L. Murphy, the inventor of the bed mechanism covered by the patent in suit, and the president of the Murphy Wall Bed Company, sets forth in an affidavit that the great value of the invention disclosed in his patent was immediately recognized by the various wall bed companies upon the first introduction on the market; that the popular demand for this type of bed tempted practically every wall bed concern in California to infringing same. As a result of such unlawful appropriation of its property, the Murphy Company has been compelled to litigate its rights over and over again at a cost to it of many thousands of dollars. He gives a list of the infringing suits that have been successfully prosecuted in that behalf. He affirms and indorses the statement of H. G. Prost in respect to the embodiment of the Murphy invention in defendant's bed structure.

In opposition to this showing on behalf of the plaintiff, the defendant submitted affidavits, among others one by George J. Henry, who also qualifies himself as an expert in patent controversies by alleging that during the last 25 years, and more particularly the last 4 years, almost continually he has been engaged in preparing patent applications, construing patents, writing descriptions, writing opinions on patent matters, testifying as a patent expert, prosecuting patent applications, and various and sundry other matters connected with inventions and patents. He identifies patent No. 1,007,592 issued to Robert H. Anderson on September 30, 1913, under which patent defendant is operating under a license. This patent he says discloses in part *a wall having an opening of greater width than the bed, the opening adapted to be closed by two doors, the width of each door being approximately one-half of said opening.* One of said doors is centrally pivoted, and the other is hinged on the side of said opening. A bed is attached to the centrally pivoted door, said bed when at one side of said opening being immediately concealed behind the two doors, whereas when it is at the other side of said opening it is shifted laterally away from approximately one-half of said opening, allowing the hinged door to close. It will be noted, he says, that when the bed shown in the Anderson patent is positioned on one side of the opening it is impossible for a person to enter through the hinged door. The defendant has therefore made an improvement on the Anderson patent, whereby the bed is laterally displaced when at the rear of the opening, as well as laterally displaced when at the front of said opening, thereby affording an entrance to a closet through the hinged door with the bed in position in either the closet or the room. Defendant has also found it unnecessary to make the hinged door approximately one-half of the opening, and has therefore made it approximately one-third of said opening.

Affiant says further that he has carefully studied the Murphy reissue patent, No. 13,-428, dated June 11, 1922, and has examined the file history of both the original and reissue applications and the prior art relating to the Murphy patent. He has also read the affidavit of Hubert G. Prost, plaintiff's expert, and has noticed that Prost, in his affidavit, says that the "broad idea" disclosed in the Murphy reissue patent is *"a bed adapted to be moved about a vertical axis through an opening and shifted laterally in respect to such opening when at the rear thereof, and when at the front thereof."*

Affiant says, further, that he has searched the Murphy patent in vain to find any such statement in either the description or the claims, and that the lateral shifting of the bed as a part of the "broad idea" seems to have been entirely overlooked by Murphy when preparing his application for the patent.

Affiant points out further that in the case of Perfection Disappearing Bed Co. v. Murphy Wall Bed Co., 266 Fed. 698, in this court, the expert Prost made an affidavit in support of a motion for a preliminary injunction in that case, in which he said:

"The Murphy reissue patent, No. 13,428, discloses, 'a bed adapted to be moved about a vertical axis through *an opening of less width than the bed* and shifted laterally in respect to such opening when at the rear thereof and when at the front thereof.'"

It will be observed, says the affiant, that Prost included the words *"of less width than the bed"* in his former affidavit, but in his present affidavit he omits these words. He also omits the following language which was found in said former affidavit:

"By reason of the bed being concealed be-

hind a closet door like every other door in the room, there is nothing in the room to suggest the presence of the bed or that the room is used as a bedroom. The bed is not only out of sight but out of mind, because there is nothing to suggest its presence in the means used to conceal it from the eye."

The affiant also points out that William L. Murphy, in an affidavit filed in the Perfection Case, said:

"One of the most valuable features of the invention covered by said reissue patent resides in the possibility of concealing *a full-sized, standard bed behind an ordinary closet door of much less width than the bed;* this feature has caused the Murphy bed to be known as the single-door type of bed, distinguishing it from all other bed structures requiring a huge door, often termed a barn door, wider than the bed, to conceal same from the eye of one in the room; however, although such a huge door is sufficient to conceal the bed from the eye, its size and appearance suggests to the mind the presence of a bed behind it, thus defeating the object of a concealed bed."

The affidavit of Neil Sinclair sets forth that he is vice president and general manager of the defendant, Rip Van Winkle Wall Bed Company; that the defendant is a licensee under the Anderson patent, No. 1,074,592; that the company is also a licensee under affiant on patent No. 1,303,509 issued to affiant on May 13, 1919. He says this last-mentioned patent shows *a wide opening through which a standard double bed is passed, the opening adapted to be closed by two doors of approximately the same width.* The vertical axis upon which the bed is mounted is central of the opening. In every case, says the affiant, the wall beds of this type sold by the Rip Van Winkle Wall Bed Company *are of a less width than the opening through which they pass.* Likewise in every case where the defendant has installed wall beds the opening through which the beds pass have always been closed by *two doors.* The beds sold by the defendant have been attached to doors which revolve about a central vertical axis, and at no time has defendant ever manufactured, sold, or installed wall beds which were attached to doors hinged at one vertical side of an opening. The axis upon which such beds have always revolved was in each case at least one-quarter, and usually one-third of the distance from one vertical side of an opening, which opening has always been specified five feet in width.

Plaintiffs' expert, Prost, replying to the affidavit of defendant's expert, Henry, stating that he (Henry) has searched the Murphy patent in vain to find the statement of Prost in either the description or the claims, that Murphy reissue patent, No. 13,428, discloses "a bed adapted to be moved about a vertical axis through an opening and shifted laterally in respect to such opening when at the rear thereof and when at the front thereof." Prost admits that Murphy does not use these exact words in describing his invention, but that he does fully describe and illustrate and claim a structure which embraces such a mode of operation, and that this mode of operation was inherently present in the broad fundamental idea of means constituting Murphy's invention.

Upon this showing and other matters submitted to the court in the affidavits, exhibits, and models, upon a full hearing, the court reached the conclusion that the defendant was an infringer and that an injunction pendente lite should issue; and it was so ordered, and defendant appeals.

[1] It is contended by the plaintiffs that the review of the order granting the preliminary injunction is limited to the inquiry whether the District Court abused its discretion in granting the writ, citing the decision of this court in Kings County Raisin & Fruit Co. v. U. S. Consol. Seeded Raisin Co., 182 Fed. 59, 60, 104 C. C. A. 499.

That rule is, however, subject to the qualification that where the order for the injunction pendente lite is entered by the District Court upon a full hearing of the case upon the merits, and the appeal brings up the entire case for determination, the order for the injunction will be reviewed and determined accordingly. Smith v. Vulcan Iron Works, 165 U. S. 518, 525, 17 Sup. Ct. 407, 41 L. Ed. 810; Bissell Carpet-Sweeper Co. v. Goshen Sweeper Co., 72 Fed. 545, 558, 19 C. C. A. 25.

The District Judge, in his opinion in the present case, granting the injunction pendente lite, said:

"The matter has been as fully presented (with full sets of models) upon this motion as it could be upon final hearing. The affidavits, briefs, and oral arguments, have, indeed, been models of ability and exhaustive in scope."

The record before us on appeal is in accordance with the statement of the District Judge and the assignments of error bring up the whole case, presenting the single question of infringement.

Plaintiffs' reissue patent, No. 13,428, in suit is for improvements in disappearing

beds. It is specified that the "invention relates to improvements in concealed beds, the object of the invention being to provide an arrangement by which a bed of full size can be concealed in a closet, apartment, or other receptacle having a door of usual size."

The defendant's bed structure is manufactured under a license from Robert H. Anderson, to whom had been issued patent No. 1,074,592 for improvements in wall beds. The application for this patent was filed in the Patent Office on December 19, 1910, or two weeks prior to the filing by Murphy of his application for patent No. 1,007,596. It is specified that the Anderson "invention relates to wall or folding beds for dwellings, hotels, apartment houses, and like places where a maximum of accommodation is required in a minimum of space, and the same being mounted upon a pivoted panel may be concealed in an opening or recess in the wall when the bed is not in use, and which is turned in a relative position in the room or elsewhere when needed."

Defendant's bed structure is also manufactured under a license from Neil Sinclair, to whom had been issued patent No. 1,303,-509 for improvements in closet beds. It is specified that the "invention relates to improvements in that class of disappearing beds which, when not in use, are concealed within a closet or other receptacle, and when in use are moved outside of the closet into an adjacent room."

It appears that the art of constructing disappearing or concealed beds has been followed over a period of more than 70 years, during which time more than 800 patents have been issued for inventions in improved structure in such devices. It follows that while the Murphy patent is not a pioneer in the art, it does show a new feature not disclosed in any of the prior improvements.

That new feature described in claims 9 and 10 consists, as claimed in claim 10, of a bed structure in a combination with a wall having an opening and *a bed of greater width than said opening, and pivotal means for connecting the wall at one vertical side of said opening* and the bed intermediate of the sides thereof.

The original patent No. 1,007,596 prior to its reissue as No. 13,428 was before this court in Marshall & Stearns Co. v. Murphy Mfg. Co., 199 Fed. 772, 118 C. C. A. 362. This suit alleged infringement of the Jordan patent, No. 892,668, issued July 7, 1908. The Jordan patent embodied a door or panel centrally pivoted at the top and bottom in the wall of an apartment, so as to be turnable upon a vertical axis. On one side of the panel was attached a full-sized folding bed, while on the other side was an article of furniture or ornament. The furniture or ornament appeared in the room in the daytime, whereas the bed was then concealed in the closet. At night the panel was reversed and the furniture was concealed, while the bed was dropped in a horizontal position in the room. *The opening in the wall was wider than the bed itself, and a centrally pivoted panel was turnable in said opening.* In order to maintain the defense of noninfringement it was necessary for the defendant to distinguish the Murphy invention from the Jordan patent. Interpreting the Murphy bed structure as set forth in the patent, Judge Gilbert, speaking for this court, said:

"The structure which is alleged to infringe is covered by letters patent 1,007,596, issued October 31, 1911, to W. L. Murphy, for 'disappearing bed.' This invention makes use of *an ordinary door* in the wall of an apartment, hinged at the side, upon the back of which there is mounted, upon a panel attached to the door and spaced away therefrom a sufficient distance to allow proper clearance, *a full-sized bed.* The panel and the bed necessarily extend beyond the inner or hinged edge of the door, *for upon a door three feet wide there is mounted a folding bed four feet wide. When the door is closed, it appears an ordinary door,* or it may carry a fixed mirror or a picture."

The court said further:

"We find that the Murphy invention *has no pivots, central or otherwise, at top and bottom, is not turnable in an opening in the wall,* and has no stops by which joints are formed with the edges of the door when turned in either position. A hinge, it is true, is in a certain sense a pivot, and in most cases of infringement it would be unimportant whether a hinge or a pivot were used, and the substitution of one for the other in a combination claim would not avoid infringement. *But the difference between the hinge and the pivot is important in the present case, as marking the distinction between the two inventions.* The appellees, indeed, might use pivots, instead of hinges; *but it is obvious that the complete reversibility of the appellant's device could not be accomplished by the use of hinges. A hinge would not permit complete reversibility. Nor does the Murphy door or structure have central pivots at top and bottom.* All of the door or structure which appears in the room in which the bed is intended to be

used is hinged at the side of the door. It is only with reference to the door in connection with the bed structure attached to the opposite side thereof, and not to the door itself, that it may be said that the structure is not hinged at the side. But even then it cannot be said to be centrally pivoted, if regard be had to the ordinary use of words, for the hinges are at a substantial distance from the center. *Nor is the Murphy structure turnable in an opening in the wall, in the sense in which the phrase is used in the claim.* The structure turns through, rather than in, an opening in the wall."

The patent was also before this court in its reissued form No. 13,428 in the Perfection Disappearing Bed Co. v. Murphy Wall Bed Co., 266 Fed. 698, 699, where Judge Gilbert, speaking for this court, said:

"The Murphy disappearing bed, as disclosed in the original patent, marked a distinct advance in the art. *The invention relates to means for concealing a bed in such a way as to leave no suggestion of its use in the room in which it is to be used.* Many previous devices for this purpose were in the field, when Murphy conceived the idea that a bed might be adapted to be moved about a vertical axis *through an opening of less width than the bed,* and shifted laterally with respect to such opening, *and concealed in an ordinary closet, behind an ordinary closet door only three feet in width.* In the original patent the claims covered two methods in which this might be accomplished. One was by attaching the bed to a door which opened outwardly from a small closet or an adjoining room. The other was by attaching a bed by pivotal means to the wall at one vertical side of the door opening. In claims 13 and 14 of the reissue patent a third method was added—that of pivoting the bed upon a vertical axis adjacent to one side of the opening. All of these methods were adapted to accomplish the same result, and to carry out the idea which was the gist of Murphy's invention."

It appears that on April 8, 1911, Murphy filed a second application for a patent for improvements in disappearing beds. It was specified in the application for this patent that the invention was "to provide an apparatus used for moving the bed from one position to another which shall be simple in character and convenient in operation, and *particularly in which a bed of ordinary full width can be passed through an opening of much less width and concealed by the door closing said opening.*"

Again the inventor says:

"A great advantage attendant upon my invention is that the bed and all traces thereof are entirely concealed when not in use, and, the door being of ordinary width, no suspicion is ever created that it conceals a bed of full width."

A patent was issued on this application, numbered 1,030,201, dated June 18, 1912. The patent contains three claims. Two of these, viz., 1 and 2, relate to the combination with a wall having an opening, *a bed of greater width than the width of said opening, pivotally secured or having a pivotal support on one side of said opening.* The third claim is "in combination with a wall having an opening, a bed, and hinges upon which said bed can swing horizontally, said hinges having pintles located substantially in the middle portion of an edge of said opening, and having loose leaves arranged to extend alternately to opposite sides of said wall, substantially as described."

Referring to the description, we find that the bed referred to is one that can be swung through an opening "notwithstanding that said opening is of less width than the bed."

We do not find that these three claims of patent 1,030,201 are substantially the same as claims 13 and 14 now in reissue patent No. 13,428. On the contrary, we find that as described in the specification, these improvements relate to the movement of *a bed of ordinary full width through an opening of much less width and concealed by the door closing said opening,* while claims 13 and 14 omit the element of an opening in the wall of "less width than the bed." It is claimed by plaintiffs that "as the said claims covered Murphy's generic invention, as embodied in the species disclosed in Murphy's patent of October 31, 1911 (No. 1,007,596), as well as such generic invention as embodied in the species disclosed in his said second application filed on April 8, 1911 (No. 1,030,201), it was deemed proper to cancel the same in said application and insert them in Murphy's first patent of October 31, 1911, which was reissued with said claims 13 and 14."

It is obvious that the effort to carry the genesis of claims 13 and 14 back to the application for patent 1,030,201, filed April 8, 1911, or to the original Murphy patent No. 1,007,596, the application for which was filed January 3, 1911, must fail.

The importance to be attached in this case to the origin of claims 13 and 14 is the question, to what combination of improvements in bed structure and opening in the wall do they relate? To a combination of a

wall opening and a bed of less width than the width of said opening, as described in the prior art, or to a wall opening with a bed of greater width than said opening, as described in the Murphy patent? Manifestly, they relate to the invention of "a combination with a wall having an opening, and *a bed of greater width than said opening, and pivotal means of connecting the wall at one vertical side of said opening."* This view of the relation of claims 13 and 14 to the invention made by Murphy of a bed structure is fully supported by the affidavit of Hubert G. Prost, plaintiff's expert, in support of a motion for a temporary injunction in the case of Murphy Bed Co. v. Perfection Disappearing Bed Co., supra, filed in this court January 2, 1919, where he said:

"The Murphy reissue patent No. 13,428 discloses:

"'A bed adapted to be moved about a vertical axis through an opening of less width than the bed and shifted laterally in respect to such opening when at the rear thereof and when at the front thereof.'

"This *broad idea,"* says the affiant, "is not disclosed in said prior art and the numerous court decisions, adjudging the validity of said patent, show that the same was the original conception of the inventor, William L. Murphy."

This view is also supported by the affidavit of William L. Murphy, the inventor himself, who in an affidavit filed January 27, 1919, in support of his motion for an injunction in that case, said:

"One of the most valuable features of the invention covered by said reissue patent resides in the possibility of concealing a full-sized, standard bed behind an ordinary closet door of much less width than the bed; this feature has caused the Murphy bed to be known as the *single-door type* of bed, distinguishing it from all other bed structures requiring a huge door, often termed a barn door, wider than the bed, to conceal same from the eye of one in the room; however, although such a huge door is sufficient to conceal the bed from the eye, its size and appearance suggests to the mind the presence of a bed behind it, thus defeating the object of a concealed bed.

"The foregoing feature is not suggested in any of said prior patents each of which discloses a door wider than the object concealed by it; furthermore, only by a process of reconstruction and rebuilding can the structure of any one of said prior patents be given a mode of operation enabling the same to possess such feature."

Referring again to the specification and drawings of the patent in suit, we find that the opening in the wall through which the bed is passed is proportionately that for a closet door of the usual size, while the bed concealed behind such door is a bed of full size.

Plaintiffs contend that the Murphy invention has a generic quality in its structure and combination that permits him to omit from claims 13 and 14 any limitation in respect to the relative width of the bed and the opening in the wall through which it is to pass. We do not think the claims of the patent can be so construed or expanded, even within the limits of the "broad idea" so persistently reiterated in the argument, viz., that the invention is "a bed adapted to move about a vertical axis through an opening and shifted laterally in respect to such opening when at the rear thereof and when at the front thereof."

We do not find in any of the claims any such direct or indirect reference to a "lateral shifting" of the bed with respect to the opening in the wall. Not a single claim suggests even remotely that the mode of operation includes a lateral shifting of the bed with respect to the opening in the wall; but the "broad idea," if claimed as an invention, must be claimed in all its essential elements. The fact that the "lateral shifting" with respect to such opening is not so claimed in the patent is fatal to the present charge of infringement as related to the structure embodying the *"broad idea."*

A further limitation contained in claims 13 and 14 remains to be considered; that is to say, a bed pivoted, or a part pivoted, on a vertical axis adjacent to one side of said opening. Defendant's bed is not pivoted or a part pivoted on a vertical axis adjacent to one side of said opening. It is attached to one side of a door centrally pivoted at the top and bottom of the opening, and is turnable or reversible in said opening. It is not turnable or reversible in plaintiffs' single-door opening. This court, in Marshall & Stearns Co. v. Murphy Mfg. Co., supra, pointed out this very distinction in that case, saying:

"We find that the Murphy invention has no pivots, central or otherwise, at top and bottom, [and] is not turnable in an opening in the wall."

[2] It is a well-known rule of the patent law that anything disclosed but not claimed

is dedicated to the public. This principle has become so well established that it may be deemed to be elementary.

In Mahn v. Harwood, 112 U. S. 354, 361, 5 Sup. Ct. 174, 178 (28 L. Ed. 665), the Supreme Court, speaking through Mr. Justice Bradley, said:

"The public is notified and informed by the most solemn act on the part of the patentee, that his claim to invention is for such and such an element or combination, and for nothing more. Of course, what is not claimed is public property. The presumption is, and such is generally the fact, that what is not claimed was not invented by the patentee, but was known and used before he made his invention. But, whether so or not, his own act has made it public property if it was not so before. The patent itself, as soon as it is issued, is the evidence of this."

This rule of law is as applicable to the "broad idea," if such there is, as it is to the essential elements of the patent.

In McClain v. Ortmayer, 141 U. S. 419, 423, 12 Sup. Ct. 76, 77 (35 L. Ed. 800), Mr. Justice Brown, delivering the opinion of the Supreme Court, said:

"Nothing is better settled in the law of patents than that the patentee may claim the whole or only a part of his invention, and that if he only describe and claim a part, he is presumed to have abandoned the residue to the public. The object of the patent law in requiring the patentee to 'particularly point out and distinctly claim the part, improvement or combination which he claims as his invention or discovery,' is not only to secure to him all to which he is entitled, but to apprise the public of what is still open to them. The claim is the measure of his right to relief, and while the specification may be referred to to limit the claim, it can never be made available to expand it."

The "broad idea" of an opening in the wall wider than the bed, or a lateral shifting of the bed with respect to such opening, has not been claimed by the plaintiff in his patent, and the patent cannot, therefore, be expanded to include either of such elements.

In Liberman v. Ruwell, 170 Fed. 590, 592, 95 C. C. A. 134, 136, Judge Gray, speaking for the Circuit Court of Appeals for the Third Circuit, stated a principle of law peculiarly applicable here:

"Where a patent depends for its novelty over the prior art upon a single limited feature of construction, the claims cannot be expanded by any doctrine of equivalents to cover a device which lacks that single essential feature."

[3] We conclude that the defendant's structure is not an infringement of the plaintiffs' patent.

The order of the District Court, granting the injunction, is accordingly reversed, and upon the merits the reversal is with direction to dismiss the complaint.