## RIP VAN WINKLE WALL BED CO. v. HOLMES et al.

(Circuit Court of Appeals, Ninth Circuit. November 22, 1926.)

No. 4943.

**I. Patents ☞324(5)—Admission of counsel that validity of patent was not attacked, coupled with qualification destroying utility of patent, held not binding on appellate court.**

Admission by defendant's counsel in patent infringement suit that validity of patent was not attacked coupled with qualification, so limiting and restricting operation of patent as to destroy its utility held not binding on appellate court.

**2. Patents ☞328—No. 1,074,592, claims I and 3, for wall bed, held invalid.**

Anderson patent, No. 1,074,592, claims 1 and 3, for wall bed, *held* invalid for lack of novelty.

Appeal from the District Court of the United States for the Southern Division of the Northern District of California; Frank H. Kerrigan, Judge.

Patent infringement suit by Verne L. Holmes and others, a copartnership doing business under the firm name and style of Holmes Bed Manufacturing Company, and others against the Rip Van Winkle Wall Bed Company. Decree for plaintiffs, and defendant appeals. Reversed, with directions.

A. W. Boyken, of San Francisco, Cal. (John H. Miller, of San Francisco, Cal., of counsel), for appellant.

Chas. E. Townsend and Wm. A. Loftus, both of San Francisco, Cal., for appellees.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge. This was a suit for infringement of letters patent No. 1,074,592, issued September 30, 1913, to Robert H. Anderson, assignor to Ruth B. Anderson, for a wall bed. The plaintiffs in the suit were the patentee, the purchaser of the patent under an executory contract of sale, and a licensee of the purchaser under the executory contract. The defendant in the action was a former licensee of the patentee. Upon final hearing the court below found that

claims one and three of the patent had been infringed and entered a decree accordingly. From that decree, the defendant has appealed.

In support of the appeal it is first contended that the license heretofore granted by the patentee to the appellant has never been revoked, and that the plaintiffs below had no legal capacity to sue. We find it unnecessary to consider these questions, however, in view of our conclusions upon the merits.

The Anderson wall bed may be briefly described as follows: There is an opening in the wall of the room leading into the closet or recess where the bed is concealed from view when not in use. This opening is wider than the double bed which passes through it. The opening is closed by two doors of about equal width, one the ordinary side hinged door, the other a panel centrally and vertically pivoted to one side of the middle of the opening. The headboard of the bed frame is secured to this panel in such position that the edge or side of the bed does not extend beyond the outer edge of the panel, thus permitting the hinged door to open or close when the bed is in the room ready for occupancy. When not in use, the bed is swung around on the pivoted panel and the panel and the side hinged door close the opening in the wall.

One of the beds manufactured by the appellant, called the Duplex, differs from the Anderson bed only in the manner of attaching the bed to the panel, and it is conceded that this bed infringes the patent, if valid. The other bed manufactured by the appellant, called the Ideal, differs from the Anderson bed in this: The bed is attached to an arm extending from a rod running down the center of the pivoted panel and horizontal thereto. When the panel is turned the horizontal rod is also turned by a mechanism at its base and the arm extending from the rod carries or swings the bed sidewise so that when the panel is reversed the bed is carried back of the panel against the wall, leaving a clear open space in front of the side hinged door, whereas under the Anderson patent the bed occupies substantially the center of the opening when the bed is concealed in the closet.

[1] The validity of the Anderson patent was in issue and contested at the trial below, but counsel for the appellant states in his brief: "In the McMullen Case, as on this appeal, the validity of the patent sued on is not attacked." This admission or concession, however, is coupled with an argument which would so limit and restrict the operation of the patent as to utterly destroy its utility. The concession, therefore, amounts to but little and is not binding on this court.

We may say at the outstart that this is not a primary invention and that Anderson was not a pioneer in the art. In discussing the prior art in Marshall & Stearns Co. v. Murphy Mfg. Co., 199 F. 772, 118 C. C. A. 362, we said:

"Jordan was not the first to invent a reversible door mounted on centrally located pivots; nor was he the first to attach a bed or other article of furniture to a door, reversible or otherwise. The patent to Elias Hines, of January 8, 1895, discloses a door turning upon pivots centrally located at the top and bottom, and furnished with stops. The patent to W. C. James, of July 10, 1906, describes a door pivotally mounted 'to swing on a vertical axis midway of its width, so that it can be turned completely around, bringing the stove, which is supported on one side thereof, into either one of the apartments at will.' In the patent to W. C. James, of May 20, 1902, there is described a mantel and bed attached to opposite sides of a horizontally pivoted door, and also a gas stove and combination table and chair attached to a door hinged at one side. The features in the Jordan invention, on which he obtained his patent, are the ingenious stops which he devised."

Again, in Rip Van Winkle Wall Bed Co. v. Murphy Wall Bed Co., 1 F.(2d) 673, 676, we said:

"It appears that the art of constructing disappearing or concealed beds has been followed over a period of more than 70 years, during which time more than 800 patents have been issued for inventions in improved structure in such devices."

[2] In the light of the prior art, of what does the novelty in this invention consist? The room, the closet or recess in the wall, the opening thereto, the use of the two doors, the one hinged, the other pivoted, and the attachment of some article of furniture to the pivoted door, are all old in the art. No novelty is claimed in the bed itself or in the mode of attachment. The only novel feature that we can discern is the location of the bed on the panel. The bed is so arranged that the hinged door may be opened or closed when the bed is in the room for use, and this arrangement likewise permits the bed to swing in a narrower recess than if attached farther out on the pivoted door. But, having in view all that is old and open to the public, it seems to us that it required nothing beyond the exer-

cise of ordinary mechanical skill to determine the location or position of the bed on the pivoted panel that would produce the best results. The effect of placing the bed in one position or another would seem apparent even to the casual observer. To use the oft-quoted language of Mr. Justice Bradley, in Atlantic Works v. Brady, 107 U. S. 192, 200, 2 S. Ct. 225, 231 (27 L. Ed. 438):

"The design of the patent laws is to reward those who make some substantial discovery or invention, which adds to our knowledge and makes a step in advance in the useful arts. Such inventors are worthy of all favor. It was never the object of those laws to grant a monopoly for every trifling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures. Such an indiscriminate creation of exclusive privileges tends rather to obstruct than to stimulate invention."

For these reasons we are of opinion that the patent in suit is lacking in novelty. The decree is therefore reversed, with directions to dismiss the bill of complaint.